UNITED STATES of America,
Plaintiff–Appellee,

v.

Carl Stafford MELTON, a/k/a Charles
Miller, Defendant–Appellant.

No. 90–5056.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1992.

Decided July 1, 1992.

Sean Patrick Devereux, Whalen, Hay, Pitts, Devereux, Hugenschmidt, Master & Belser, Asheville, N.C., argued, for defendant-appellant.

Max Oliver Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., argued (Thomas J. Ashcraft, U.S. Atty., on the brief), for plaintiff-appellee.

Before RUSSELL, MURNAGHAN, and NIEMEYER, Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

The present appeal was filed by the defendant, Carl Stafford Melton, to challenge the sentence imposed in the district court for the Western District of North Carolina, in which the district court departed from the sentence range set forth in the United States Sentencing Guidelines (the "Guidelines"), for distribution of narcotics, because the court found that Melton had committed a murder that was related to his drug crime and that warranted a departure.

Following indictment on forty-one counts of drug-related offenses, including, *inter alia*, conspiracy to possess with intent to distribute Hydromorphone HCL (Dilaudid),[1] Melton entered a conditional plea of guilty on all counts pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure, whereby he reserved the right to appeal.[2]

---

1. Dilaudid is a schedule II narcotic controlled substance.

2. Initially, Melton intended to go to trial. However, when the district court denied his motion *in limine*, which sought to bar the introduction of any evidence of the murder of John Jethro King, Melton thereupon decided to enter a conditional guilty plea.

Because the court determined that Melton had committed a murder that was related to his drug crime [3] and was not taken into account in the Guideline range, the court departed upward from the applicable sentencing range of 70 to 87 months, imposing a sentence of 240 months. The present appeal followed.

## I.

In early 1988, John Jethro King ("King") introduced Melton to Joseph O'Shea ("O'Shea"). Following the introduction, O'Shea began shipping Dilaudid from Philadelphia, Pennsylvania to Melton in Asheville, North Carolina. From May, 1988 until February, 1989, O'Shea sent shipments on approximately two week intervals, with each shipment containing approximately 250 four milligram tablets of Dilaudid. Melton, in return, paid O'Shea between eighteen and twenty dollars per tablet. The record indicates that Melton and his girlfriend, Jessie Hoglan ("Hoglan"), consumed many of the tablets and that Melton had others distribute the remainder for him.

On February 9, 1989, King, the man who had introduced Melton to his drug supplier, O'Shea, was found, shot to death, on Amboy Road on the outskirts of Asheville, North Carolina. Several days later Melton was charged in state court with the first degree murder of King. The murder charge was still pending in state court at the time oral argument was heard in the instant case.

On March 3, 1989, Melton was indicted on drug charges and on March 7, 1990, he entered a guilty plea to all counts, reserving the right to appeal the denial of his motion in limine, which sought to prevent the government from introducing into evidence the murder of King.

The court held an in-depth sentencing hearing, during which time the government, attempting to persuade the court to enhance Melton's sentence for the drug charges, called various witnesses to testify about Melton and his alleged murder of King to protect his drug business. Melton's girlfriend, Hoglan, testified at the sentencing hearing that Melton telephoned her on the night of King's murder and confessed to her that he had killed King because he suspected, correctly, that King was working as an informant for law enforcement officials. According to Hoglan, Melton informed her that the murder had occurred on Amboy Road, and that the defendant had shot King only once because the gun had jammed. The conversation between Hoglan and Melton apparently took place prior to the time that King's body was found.

O'Shea also testified at sentencing that Melton had called him several times in February of 1989, informing him that he had killed King because King was an informant. O'Shea testified that Melton told him that he had taken care of King and that King would not bother them anymore. Melton also related to O'Shea that he had called King over to the window of his car and shot King only once because the gun had jammed.

Detective Grover Charles Matthews testified at the sentencing hearing that two inmates who were incarcerated with Melton informed Detective Matthews that Melton told them that he had killed King with a nine millimeter weapon and that he had shot only once because the gun jammed.[4] The inmates also reported that Melton had attempted to hire them to kill Hoglan to silence her.

In sentencing Melton, after determining that the base offense level was 20,[5] the

---

3. At the time of sentencing, Melton, though he had been charged in a North Carolina state court with murder, had not been tried therefor. He was, consequently, at that time unconvicted.

4. According to Detective Matthews, one of the two inmates told him that Melton confessed to having used a nine millimeter Detonica to mur-

der King. Ballistic reports confirm that a nine millimeter Detonica was used in King's murder.

5. Melton has argued that the district court erred initially in determining his base offense level because the court miscalculated the drug quantities involved. Melton, however, has admitted that the government proved a total of 20 grams of Dilaudid. Based upon that quantity, we find

district court added a two level enhancement for obstruction of justice and a four level enhancement for the defendant's role in the offense. *See* U.S.S.G. §§ 3C1.1, 3B1.1.[6] Finally, based upon the testimony recounted above, the district court departed upward from the Guideline range, pursuant to section 5K2.1 of the Guidelines, finding that Melton had feloniously killed King and that the murder was related to the drug crimes. Ultimately, the district court imposed a sentence of 240 months, which resulted in a sentence of 153 months in excess of the maximum permitted by the applicable Guideline range relating to the drug crimes.

## II.

### A. *District Court's Factual Finding that Melton Murdered King to Protect His Drug Business*

■ First, Melton has argued that the district court's factual finding that Melton murdered King to protect his drug business was clearly erroneous because the finding is not supported by a preponderance of the evidence. We are bound to accept the district court's factual findings made pursuant to the Guidelines unless such determinations are clearly erroneous. *United States v. White*, 875 F.2d 427, 431 (4th Cir.1989).

The testimony at sentencing contained ample evidence to support the district court's finding of fact. It passed the preponderance test. *See United States v. Powell*, 886 F.2d 81, 85 (4th Cir.1989), *cert. denied*, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). Melton's girlfriend, Hoglan, and his drug dealing partner, O'Shea, both testified that Melton confessed to them that he had murdered King. Detective Matthews testified regarding the reports, concerning the murder of King, that he had received from two inmates who were incarcerated with Melton. Moreover, each of the accounts of the murder that were given to officials was strikingly similar and was, to a large part, borne out by the evidence recovered. Furthermore, the record indicates that King was a government informant, which was the reason Melton told both Hoglan and O'Shea that he had killed King. Additionally, Melton, himself, admitted that he told both Hoglan and O'Shea that he had committed the murder; although he later changed his story, now claiming that he was lying about King's murder in order to make himself seem tough.

Melton has sought to counter the strong evidence on the record that he killed King by arguing that the accounts given by the witnesses contain discrepancies from the actual crime scene. Although O'Shea's and Hoglan's testimony varied in minor respects as to the actual crime scene, both, nevertheless, correctly recounted that King had been shot once, that Melton killed King because he was a drug informant, and that the killing occurred near Amboy Road in Asheville, North Carolina. Additionally, there was Melton's own admission that he told both O'Shea and Hoglan that he killed King. We conclude that the district court's findings, based upon a preponderance of the evidence, that Melton killed King and that such killing was related to his drug offense are not clearly erroneous, if erroneous at all.

### B. *District Court's Departure from the Guideline Range*

Second, Melton has argued that the district court erred in departing upward, pursuant to Guideline section 5K2.1, because the court, in effect, tried and sentenced him for first degree murder, a crime for which he has not been convicted. The government, on the other hand, has argued that the death of King was related to and resulted from Melton's drug offense and that the alleged murder is therefore relevant conduct for sentencing purposes.

■ Proof of conviction is not required, nor is proof beyond a reasonable doubt. A preponderance of the evidence will suffice

---

that the district court correctly calculated a base offense level of 20.

**6.** The court also refused to depart downward under U.S.S.G. § 3E1.1 for acceptance of responsibility.

for sentencing purposes. *United States v. Powell*, 886 F.2d 81, 85 (4th Cir.1989), *cert. denied*, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990) (holding that, in order to satisfy due process, findings made at sentencing need only be based upon a preponderance of the evidence).

■ The standard of review for departures from the applicable Sentencing Guideline range involves "a multi-part test of 'reasonableness.'" *United States v. Hummer*, 916 F.2d 186, 192 (4th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991). We have enunciated the test as follows:

> Under this test, we first examine *de novo* the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors 'not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' 18 U.S.C.A. § 3553(b) (West Supp.1990). If the sentencing court identified one or more factors potentially warranting departure, we apply a clearly erroneous standard and review the factual support in the record for those identified circumstances. Upon ascertaining that there is an adequate factual basis for the factors, we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines range 'should result.' *Id.* Similarly, we apply an abuse of discretion standard to determine if the extent of departure was reasonable.

*Id.* at 192. Applying the *Hummer* test to the facts of the present case and the rationale articulated by the district court in support of its departure, we find that the district court appropriately identified King's murder as an aggravating factor that warranted an upward departure from the Guideline range.

The district court made several factual findings by a preponderance of the evidence: (1) that Melton killed King; (2) that the killing was an aggravating circumstance related to the offense charged within the meaning of Guideline section 1B1.3(a)(1); (3) that the killing was done as a result of a long-standing intention to commit the crime involving prior planning; (4) that Melton's motive for the killing was to silence King to protect his drug operation because Melton knew that King was an informant; (5) that the Guidelines did not take into account the type of killing involved in the instant case when they set the Guideline range for the drug offense involved; (6) that extensive persuasive evidence of the killing of King came from the testimony of Hoglan, O'Shea, and Melton himself; and (7) that corroborating evidence of the killing was supplied by the fact that Melton tried to hire fellow inmates to kill Hoglan to silence her and by the fact that Melton assaulted those inmates when he determined that they were intending to give evidence about his conversations with them.

Based upon the foregoing factual findings, the district court decided to depart from the Guideline range, grounding such departure on Guideline sections 5K2.0 and 5K2.1. Section 5K2.0 is a general section which authorizes departures from the Guideline range. In particular, section 5K2.0 provides for departures when a court determines that the case presents a factor "'not adequately taken into consideration by the sentencing commission in formulating the guidelines'" such that "'a sentence different from that described'" in the applicable Guideline should result.[7] Section

---

7. Guideline § 5K2.0 provides:

 Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'

 Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts. Nonetheless, this subpart seeks to aid

5K2.0 further explains that the remaining sub-parts of section 5K2 are meant to guide the court *"by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines"* (emphasis added).

One of such sub-parts, section 5K2.1, deals with one factor that the United States Sentencing Commission (the "Commission") expressly has identified as warranting departure: "death." Guideline section 5K2.1 provides:

> If death resulted, the court may increase the sentence above the authorized guideline range.
>
> Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction ... already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

U.S.S.G. § 5K2.1. Relying on section 5K2.1, the district court used the death of King as an aggravating factor warranting such a departure from the Guideline range. We must, therefore, analyze the Guideline applicable to Melton to determine whether death was considered in the base offense level.

 Melton was convicted of conspiracy to possess with intent to distribute and distribution of Dilaudid, pursuant to 21 U.S.C. § 846, and with intent to distribute and distribution of Dilaudid, pursuant to 21 U.S.C. § 841(a)(1). The Guideline for such convictions is found in section 2D1.1(a)(3). On its face, Guideline section 2D1.1(a)(3) does not take into account, in setting the base offense level, the murder of a drug informant incident to a drug conspiracy or drug offense.[8] Accordingly, the district court did not err in holding that Melton's murder of King constituted an aggravating factor that was not adequately encompassed in the applicable Guideline.

Furthermore, the district court found that all of the factors mentioned in section 5K2.1 as warranting a substantial departure were present. The court found that Melton intentionally killed King in order to protect his drug business, that Melton had a long-standing plan to commit such a murder, and that the applicable Guideline range did not take the risk of personal injury or death into account. The findings establishing the factors identified by the court as warranting the departure are not clearly erroneous, considering the ample testimony in the record from, among others, Hoglan, O'Shea, Detective Matthews, and Melton, himself.

the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines.... Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court.

8. Melton has argued that the Guidelines do take into account murder in that the district court more properly should have made an upward adjustment pursuant to section 4A1.1 on the basis of prior criminal conduct. Although the district court could have proceeded as Melton suggested, the district court also properly considered an upward departure pursuant to section 5K2.1.

Moreover, the cases cited by Melton as supporting the position that the district court should have proceeded exclusively under section 4A1.1 involve post-plea offenses and are not analogous to the case at bar. Rather, more instructive is the case of *United States v. Rivalta,* 892 F.2d 223 (2nd Cir.1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 215, 116 L.Ed.2d 173 (1991), in which the Second Circuit upheld an upward departure, pursuant to section 5K2.1, for a murder resulting from the defendants' scheme to defraud the victim of diamonds.

**1334**

■ Having found that an adequate factual basis supports the district court's determination that King's death constitutes a factor potentially warranting a departure, we now must "apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside. the Guidelines range 'should result.'" *Hummer*, 916 F.2d at 192. The district court found that Melton intentionally murdered King and that such conduct was dangerous. Moreover, the district court properly concluded that the Guidelines do not contemplate a situation where, as here, a drug informant is killed by a drug trafficker incident to a drug conspiracy. The death of a drug informant, in connection with a conspiracy to distribute drugs, is certainly an extremely serious matter. Under such circumstances, we cannot say that the district court abused its discretion in departing upward from the Guideline range.[9]

■ Finally, we must examine the sentence imposed to determine whether it is reasonable, applying an abuse of discretion standard. *Hummer*, 916 F.2d at 192, 194. In imposing an additional 153 months' imprisonment, the district court analogized to similar offenses mentioned in the Guidelines to support the upward departure. First, the court analogized to Guideline section 2D1.1(a)(2), which provides an offense level of 38, for a death that results from the use of a drug. For such an offense, the Guideline range is 262 to 327 months for someone, like Melton, who has a Criminal History Category of II.[10] Second, the court analogized to Guideline section 2A1.1, which provides an offense level of 43 for first degree murder. Such an offense results in a mandatory sentence of life imprisonment. Finally, the court analogized to the death penalty statute, 21 U.S.C. § 848(e)(1), which provides a sentence from

twenty years to life or the death penalty for those convicted of a murder, involving a drug offense. The court noted that although section 848(e)(1) contained a threshold minimum amount of drugs which was not met in Melton's case, the section nevertheless represented a policy statement regarding the seriousness of death occurring incident to drug trafficking.

The analytical approach employed by the district court, relying on analogous Guideline provisions to guide the court's departure, is one which we have held proper. *See Hummer*, 916 F.2d at 194; *accord United States v. Kikumura*, 918 F.2d 1084, 1112 (3rd Cir.1990). Furthermore, the sentence imposed on Melton did not exceed the sentence that would result under the Guidelines if Melton actually had been convicted of murder. *See Hummer*, 916 F.2d at 194. Therefore, we find that the district court did not abuse its discretion in imposing Melton's sentence.

C. *Other Sentencing Challenges*

1. *Role in Offense*

■ The district court adopted the presentence report's recommendation that Melton be deemed subject to a four level upward adjustment pursuant to Guideline section 3B1.1 because "the defendant was an organizer or leader of a criminal activity involving five or more participants." Melton has argued that the district court erred in imposing the enhancement. The district court's determination that Melton was an organizer or leader in the offense is a factual determination and therefore we review it under the clearly erroneous standard. *See United States v. Sheffer*, 896 F.2d 842, 846 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 432, 112 L.Ed.2d 416 (1991).

The evidence indicates that Melton directed the distribution of Dilaudid by John Alexander, Avery Alexander, Teresa Alexander, and Jackie Messer. Additionally,

9. Such a conclusion is mandated by the Supreme Court's decision in *Mistretta v. United States,* 488 U.S. 361, 376 n. 10, 109 S.Ct. 647, 657 n. 10, 102 L.Ed.2d 714 (1989), in which the Court upheld the constitutionality of the Sentencing Guidelines and upheld the Guidelines' authorization for sentencing criminal offenders

for prior criminal acts "whether or not they resulted in convictions."

10. Guideline section 2D1.1(a)(2) covers both intentional and unintentional deaths resulting from drugs.

the evidence indicates that O'Shea supplied Melton with the Dilaudid tablets, that King was involved in the purchase and sale of the tablets in several instances and that a man called Red also supplied Melton with tablets. Moreover, detailed financial records of drug transactions totalling $26,-000 were recovered in Jackie Messer's home with Melton's fingerprints on such records. While the evidence may not be overwhelming that Melton was the organizer, the foregoing amounts to sufficient evidence supporting such a determination so that the district court's conclusion was not clearly erroneous.

### 2. *Obstruction of Justice*

■ Melton also has contended that the district court erred in imposing a two level upward adjustment for obstruction of justice pursuant to Guideline section 3C1.1. The district court imposed such an adjustment based upon the recommendation of the presentence report. The presentence report recommended the two level upward adjustment pursuant to Guideline section 3C1.1 because the defendant "has been charged ... with Felony Escape from Federal Custody while Incarcerated on the Instant Offense."

According to the record, Melton attempted to escape from custody at the Henderson County Jail, apparently by kicking a deputy and running approximately twenty yards down the hall before he was ultimately apprehended.[11] Application Note 3(e) to Guideline section 3C1.1 indicates that an enhancement for obstruction of justice applies when the defendant escapes or attempts to escape from custody before trial or sentencing. Thus, the district court did not err in imposing a two level enhancement under Guideline section 3C1.1.

### 3. *Acceptance of Responsibility*

■ ▪ Melton next has insisted that he is entitled to a two level downward adjust-

ment for his acceptance of responsibility. Under Guideline section 3E1.1(a), a court may impose a two level reduction of the offense level of a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Because the evaluation of a defendant's acceptance of responsibility is a factual question, "due deference for the sentencing court requires an appellate court to accept its findings unless they are clearly erroneous." *United States v. Cusack,* 901 F.2d 29, 31 (4th Cir.1990).

■ The district court did not set forth its express reasoning on the issue of acceptance of responsibility, but instead found that the presentence report correctly dealt with the adjustments involved. The presentence report indicated that Melton's acceptance of responsibility was not timely pursuant to Application Note 1(g) to Guideline section 3E1.1.

Melton has maintained that he confessed his involvement in the offense to Detective Matthews; he voluntarily surrendered to police when he knew that he was wanted in connection with the King killing and surrendered without incident to federal authorities on the drug charges; and he entered a conditional guilty plea to the offenses charged in the indictment. Thus, he has claimed that he has shown entitlement to the two level downward adjustment for acceptance of responsibility.

It is significant to our analysis to note that the district court imposed an adjustment under Guideline section 3C1.1 for obstruction of justice. Because we have upheld the district court's imposition of an upward adjustment for obstruction of justice, we find that the district court was not clearly erroneous in refusing to award a downward adjustment for acceptance of responsibility. Our conclusion is dictated by Application Note 4 to Guideline section 3E1.1, which provides that an enhancement for obstruction of justice "ordinarily indi-

---

**11.** Melton has admitted the escape attempt, claiming that he was trying to seek help from a doctor for his untreated drug addiction. Nonetheless, the Guidelines indicate that an upward adjustment is warranted by an escape attempt and make no exception for the reason underlying such escape attempt. U.S.S.G. § 3C1.1, comment. (n. 3(e)).

cates that the defendant has not accepted responsibility for his criminal conduct."

### D. *Motion In Limine*

■ Melton also has contended that the district court erred in denying his motion *in limine,* which sought to exclude at trial any evidence of the death of King. His argument has been that the evidence was not relevant and that any probative value of such evidence was greatly outweighed by its prejudicial nature and its potential to mislead the jury.

The district court, at a hearing pre-trial, decided not to bar the government from mentioning King's murder. The court held as follows:

> In view of the Court that there are sufficient reasons to let the evidence in [sic]. It is relevant. It is apparently offered as a part of the conspiracy evidence. It would be to take out a portion of the offense itself to exclude it. The Court is mindful of the prejudicial effect of it. But it does not appear to me to be of a prejudicial nature that would exclude it under the 400 series rules.

The balancing of the probative value against the potential prejudice of evidence is entrusted to the sound discretion of the trial court, and its appraisal, absent extraordinary circumstances, will not be disturbed on appeal. *United States v. Simpson,* 910 F.2d 154, 157 (4th Cir.1990). In the instant case, the government intended to prove at trial that Melton murdered King pursuant to a conspiracy to distribute Dilaudid. As an alleged overt act of the conspiracy, the death was certainly relevant. Moreover, the extent to which such evidence was admissible and the issuance of limiting instructions were matters to be considered by the court at trial. Melton, however, decided to enter a conditional guilty plea rather than face trial. Because the evidence of King's death was relevant, we hold that the district court was not erroneous in denying Melton's motion *in limine* and in refusing to bar any mention of King's death prior to trial.

### E. *Eighth Amendment*

■ Finally, Melton has contended that the twenty year sentence imposed violates the Eighth Amendment's prohibition against cruel and unusual punishment because the sentence is disproportionate within the meaning of *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). We have held that a proportionality analysis is unavailable unless a term of life imprisonment has been imposed. *See, e.g., United States v. Guglielmi,* 929 F.2d 1001, 1002, 1004 (4th Cir.1991); *United States v. Rhodes,* 779 F.2d 1019, 1028 (4th Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). Accordingly, Melton's sentence of twenty years, being less than life imprisonment, is not subject to proportionality review. *See id.*

Consequently, we affirm the defendant's sentence in whole.

AFFIRMED.