986 F.2d 1415
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Tamara BAYLES, a/k/a Tammy Day, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Tamara BAYLES, a/k/a Tammy Day, Defendant-Appellant.
 Nos. 91-5697, 91-5713.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 29, 1992
Decided: February 12, 1993
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Bluefield. Elizabeth V. Hallanan, District Judge. (CR-91-149-1)
 Argued: Jerome J. McFadden, Gibson & McFadden, Princeton, West Virginia, for Appellant.
 John Castle Parr, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before RUSSELL, HALL, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Tamara Bayles appeals her conviction and sentence for conspiracy to possess with intent to distribute cocaine. We affirm.
 
 I.
 
 2
 On the night of November 4, 1989, Bayles drove three male acquaintances to the Bluefield, West Virginia, home of Carl Still, a local cocaine dealer. One of the men told Bayles to park down the road past Still's house and to wait for them there. The men then donned old clothes and walked back to the house. They entered the house, murdered Still, and stole money and cocaine. For her assistance, Bayles was given $500 and ten grams of cocaine. She then took the men to a wooded area where they buried their bloody clothes.
 
 
 3
 A jury found Bayles guilty on a single conspiracy count (21 U.S.C. §§ 846 and 841(a)). The district court departed from a 27-33 month guideline range to 120 months on the basis of U.S.S.G. § 5K2.1, which authorizes an upward departure "if death resulted." On appeal, Bayles attacks the sufficiency of the evidence, the introduction of hearsay evidence during trial, and the upward departure.
 
 II.
 
 4
 The elements of conspiracy are an agreement between two or more persons to commit an unlawful act in concert. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). The crux of Bayles' sufficiency argument is that there was no proof that she ever agreed to the murder and robbery of Still. Her conviction, however, was for conspiracy to distribute and to possess with intent to distribute, and not for murder or robbery.
 
 
 5
 We review jury verdicts to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). We must construe all evidence in the light most favorable to the government, assume its credibility, and draw all favorable inferences from it. Id. We note further that proof of conspiracies often depend on circumstantial rather than direct evidence. See Giunta, 925 F.2d at 764. We turn, then, to a review of the evidence.
 
 
 6
 In a tape-recording of a conversation between Bayles and a government informant, Donald Potter, Bayles admitted that she intended to buy cocaine from Still and then use the cocaine to barter for "5 bundles of heroin [that] I would've been able to sell for $50 a bag." Although Still had been the subject of an undercover police investigation and was known to be in possession of large amounts of cocaine, no drugs were found by police in the home after the murder. Potter testified that Bayles told him that the three men carried "a big bag of cocaine" out of the house, a bag that "you could get two pounds [of cocaine] in easy." The jury was clearly justified in finding that the conspirators agreed to obtain a large amount of cocaine for the intended purpose of distributing it afterward. That Bayles may not have been privy to the precise plan of acquisition until some time into the trip is not dispositive. It is not necessary that each conspirator possess complete knowledge of every aspect of the conspiracy. United States v. Mabry, 953 F.2d 127, 130 (4th Cir. 1991), cert. denied, 112 S. Ct. 1951 (1992). We find that the evidence was sufficient to support the conviction.
 
 III.
 
 7
 Bayles contends that the district court committed reversible error in allowing Sergeant Sam Pennington of the West Virginia State Police to testify about what Potter had told him during an interview in February 1991. The general rule is that a witness's credibility may not be bolstered unless it has first been challenged. United States v. Bolick, 917 F.2d 135, 138 (4th Cir. 1990) (impeachment must precede rehabilitation). After a witness's truthfulness has been attacked, however, the other side may introduce evidence that that witness's testimony is consistent with statements he had made earlier. Fed. R. Evid. 801(d)(1)(B) provides that such consistent statements are not hearsay when they are introduced to rebut charges that the witness recently fabricated the story he told on the stand or was motivated to testify falsely. We conclude that Potter's credibility was attacked during cross-examination and, therefore, that the government was entitled to rehabilitate Potter through Pennington's testimony regarding prior consistent statements. We conclude further that any error committed with regard to testimony concerning any of Potter's particular out-ofcourt statements was harmless. See United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980) (in determining whether jury was "substantially swayed" by non-constitutional error, appellate court should consider closeness of case, centrality of issue affected by the error, and steps taken to mitigate the error).
 
 IV.
 
 8
 Bayles contends that the facts of the case do not trigger an upward departure under the guidelines. She argues further that the district court failed to fully explain why the fourfold upward departure was warranted. We find that the departure imposed was neither in violation of law nor a result of an incorrect application of the guidelines. 18 U.S.C. § 3742(a)(1,2).
 
 
 9
 Our review of departure is guided by "a multi-part test of 'reasonableness'...." United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990), cert. denied, 111 S. Ct. 1608 (1991). The test has been set forth as follows:
 
 
 10
 Under this test, we first examine de novo the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors "not adequately taken into consideration by the Sentencing Commission in formulating the guide lines." 18 U.S.C.A. § 3553(b) (West Supp. 1990). If the sentencing court identified one or more factors potentially warranting departure, we apply a clearly erroneous standard and review the factual support in the record for those identified circumstances. Upon ascertaining that there is an adequate factual basis for the factors, we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines range"should result." Id. Similarly, we apply an abuse of discretion standard to determine if the extent of departure was reasonable.
 
 
 11
 Id. The departure in the instant case passes muster at each stage of this test.
 
 
 12
 Subpart 5K2 of the Sentencing Guidelines "seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines," but which may nonetheless warrant departure in the court's discretion. U.S.S.G. § 5K2.0, p.s. (Nov. 1991). The section cited by the court to justify the departure reads in part:
 
 
 13
 If death resulted, the court may increase the sentence above the authorized guideline range.... The extent of the increase should depend on the dangerousness of the defendant's conduct [and] the extent to which death or serious injury was intended or knowingly risked.... [A] substantial increase may be appropriate if the death was intended or knowingly risked....
 
 
 14
 U.S.S.G. § 5K2.1, p.s. (Nov. 1991). According to the judgment, the district court departed from a range of 27-33 months to 120 months after considering "the fact that a life was taken, the violent means which the same occurred, and that the Defendant was convicted by a jury of such conspiracy which was ongoing on the night of the death of Carl Still." Bayles argues that the court was required to find that she "intended or knowingly risked death" before departing. We disagree that such a finding is necessary.[1] Under the guidelines, the triggering event is "if death resulted." This "factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court." U.S.S.G. § 5K2.0, p.s. In other words, a death resulting from a defendant's crime opens the door; "the extent to which death or serious injury was intended or knowingly risked" is a factor going to how far the door is opened. The district court correctly identified Still's murder as a factor that potentially warranted an upward departure.
 
 
 15
 The next step is to determine whether there is factual support for the identified circumstance cited as the basis for the departure. In Bayles' case, we must decide whether it was clearly erroneous for the district court to have found that "death resulted" from Bayles' criminal activities. If Bayles knew nothing of her passengers' plans at the outset of the trip to Still's house, she soon had reason to strongly suspect that more than a run-of-the-mill drug purchase was afoot. The passengers whispered amongst themselves in the car, told Bayles to park down the street from the house, and donned old clothes before going to the house. She drove the getaway car, a role from which she never for a moment attempted to extricate herself. We conclude that the district court did not clearly err in finding that "death resulted" from activities of which Bayles was part.
 
 
 16
 Next, "we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines'should result.' " Hummer, 916 F.2d at 192 (citing 18 U.S.C.A.s 3553(b) (West Supp. 1990)). A brutal murder is a serious matter that places this case outside the realm of everyday drug purchases. We cannot say that the decision to depart was an abuse of discretion. See United States v. Melton, 970 F.2d 1328 (4th Cir. 1992) (upholding a § 5K2.1 upward departure, from a range of 70-87 months to 240 months, that was based on defendant's murder of a drug informant).
 
 
 17
 Finally, the extent of the departure must be reasonable. We review the reasonableness under an abuse of discretion standard as well. In Melton, the court approved the district court's analogization to U.S.S.G. § 2D1.1(a)(2), which prescribes an offense level of 38 "for a death that results from the use of a drug." 970 F.2d at 1334. (In Bayles' case, an offense level of 38 would have yielded a range of 292-365 months.)[2] This method of analogizing was not expressly employed by the district court in Bayles' case. However, the public policy reflected in the criminal code and the guidelines is that death incident to drug-trafficking crimes is a serious matter warranting harsh punishment. Bayles' ten-year sentence is not so great as to be deemed the result of an abuse of discretion.
 
 AFFIRMED
 
 
 [1]
 At least two courts of appeals agree with Bayles' interpretation of the guideline. In United States v. Rivalta, 892 F.2d 223, 233 (2d Cir. 1989), the court held that a § 5K2.1 departure must be"supported by an explicit finding that defendant 'intended' or 'knowingly risked' [the victim's] death." The Seventh Circuit expressly adopted the Rivalta standard in United States v. White, 979 F.2d 539 (7th Cir. 1992): "We follow the Second Circuit in requiring that sec. 5K2.1 departures be supported by findings that death was intentionally or knowingly risked. By setting forth this standard, the Sentencing Commission indicated that such departures are appropriate only when the defendant is actually aware that a fatal outcome is likely."
 
 
 [2]
 In Melton, the district court also analogized to § 2A1.1 (first-degree murder) and 21 U.S.C. § 848(e)(1) (death penalty for certain murders involving drug offenses)