**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5671

TIMOTHY ADAMS, a/k/a Rodney
Clark, a/k/a Smitt,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., District Judge.
(CR-94-302)

Argued: October 30, 1996

Decided: December 17, 1996

Before WILLIAMS and MICHAEL, Circuit Judges, and
DOUMAR, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David G. Secular, New York, New York, for Appellant.
Michael Francis Joseph, Assistant United States Attorney, Greens-
boro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton,
Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Timothy Adams was convicted (after a jury trial) of conspiracy to possess with the intent to distribute cocaine base ("crack"). See 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced him to life without parole. See 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1. Adams challenges his conviction and sentence, claiming that the evidence against him was insufficient to establish the conspiracy charged, that certain evidence was erroneously admitted, that the statute and sentencing guidelines under which he was sentenced are unconstitutional, and that the sentence imposed violates his rights under the Eighth Amendment. We find no merit in these contentions and affirm the district court.

I.

The evidence, viewed in the light most favorable to the government, see United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993), established the following. Adams was the leader of a group that brought cocaine from New York for sale in Winston-Salem, North Carolina. Adams recruited Paula and Clarence Bonaparte, husband and wife, to transport the cocaine from New York to Winston-Salem. Once the drugs reached Winston-Salem, Adams had several people who acted as "runners" or street distributors for him. Adams and Patrick Harvey, another large operator, acted as backup suppliers for each other. One of Adams' sellers, Tyrone Smith, testified that Adams told him that he could get drugs from Patrick Harvey when Adams was out of stock. Paula Bonaparte testified that she made trips to New York to fetch cocaine for both Adams and Harvey. Finally, Harvey and Adams shared profitable dealers.

II.

Adams first argues that the government's proof against him established at most two separate conspiracies which were different from

2

the one far-reaching conspiracy led by Patrick Harvey and charged in the indictment. Specifically, Adams claims that the evidence was insufficient to link him to Harvey's broad conspiracy. A participant's link to a drug conspiracy can be established by showing that he has acted in furtherance of a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Burgos , 94 F.3d 849, 858 (4th Cir. 1996) (en banc) (citation omitted). We are satisfied that the evidence, which we summarized above in part I, was sufficient to link Adams and Harvey in an overall conspiracy to supply the drug market in Winston-Salem.

III.

Adams next makes two complaints about the admission of evidence. First, he argues that the district court committed reversible error in admitting evidence that he and his co-conspirators possessed firearms. Adams contends that because the indictment did not charge him with firearms violations, the evidence about guns was irrelevant and unduly prejudicial. We have held, however, that evidence of firearms possession is relevant in narcotics conspiracy cases. United States v. Ricks, 882 F.2d 885, 892 (4th Cir. 1989), cert. denied, 493 U.S. 1047 (1990); United States v. Collazo, 732 F.2d 1200, 1206 (4th Cir. 1984), cert. denied, 496 U.S. 1105 (1985). However, evidence of firearms possession may not be introduced if the government is trying to prove an uncharged crime or if the evidence unfairly prejudices the defendant. Neither limitation is implicated in this case. The references to guns were brief and in the context of showing that guns were around when drugs were being sold, nothing more. Thus, the district court did not err in allowing testimony about the firearms.

Second, Adams argues that he was denied a fair trial because several witnesses (during the Government's case) mentioned that Adams was in prison during a portion of the conspiracy period. Specifically, Adams says that testimony about his earlier imprisonment was evidence of his propensity for crime that is inadmissible under Rule 404(b) of the Federal Rules of Evidence. To begin with, we note that the government did not ask its witnesses about Adams' prior imprisonment. The witnesses simply mentioned the fact inadvertently in answering questions on other topics. The government argues that this

3

testimony was proper in any event because it served to fill a chronological or conceptual void. See United States v. Yusufu, 63 F.3d 505, 511 (7th Cir.), cert. denied, 116 S. Ct. 578 (1995). We need not decide whether it was error for the jury to hear testimony about Adams prior incarceration because to the extent there might have been error, it was cured or waived. After each mention of Adams' prior imprisonment, the district court instructed the jury to disregard the testimony because it had nothing to do with this trial. We believe that this instruction was sufficient to cure any error. Bell v. Evatt, 72 F.3d 421, 434 (4th Cir. 1995) (noting that there is an assumption that jurors follow their instructions), cert. denied , 116 S. Ct. 2533 (1996). Finally, even if any error was not cured, it was waived. As part of his alibi defense Adams offered testimony from his own witnesses that he was incarcerated during a portion of the conspiracy. Thus, Adams was not prejudiced by government witness testimony that he had been in prison.

IV.

Adams raises constitutional challenges to his sentence. He argues that the statute and the Sentencing Guidelines, which impose stiffer sentences for crack, see 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1, discriminate against African Americans in violation of the Equal Protection Clause. Adams contends that we should use a strict scrutiny analysis to evaluate this claim. He acknowledges that we have upheld the constitutionality of the stiffer crack sentences under a rational basis standard. United States v. Thomas, 900 F.2d 37 (4th Cir. 1990). In Thomas we noted that "21 U.S.C. § 841(b) does not discriminate on the basis of a suspect classification or the exercise of a fundamental right, and thus does not require heightened scrutiny." Id. at 39. Adams argues, however, that the Supreme Court's recent decision in Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097 (1995), changes the landscape and requires us to re-evaluate our decision in Thomas. We disagree.

Adams says that Adarand stands "for the proposition that because it is impossible to determine the true intent behind a statute, any law which has a disparate racial impact must be subjected to the standard of strict scrutiny in order for the demands of due process to be satisfied." Brief of appellant at 37. Adams misreads Adarand. The

4

Supreme Court said in Adarand, "We note, incidentally, that this case concerns only classifications based explicitly on race, and presents none of the additional difficulties posed by laws that, although facially race neutral, result in racially disproportionate impact and are motivated by a racially discriminatory purpose." Adarand, 115 S. Ct. at 2105 (emphasis added). Thus, the Court made clear that it was not reversing prior disparate impact cases that required a showing of discriminatory intent for strict scrutiny to apply. See, e.g., Washington v. Davis, 426 U.S. 229, 242 (1976) (a showing of disproportionate impact standing alone is insufficient to trigger strict scrutiny analysis). Here, Adams has offered nothing which causes us to re-visit Thomas because he (Adams) has alleged nothing more than disparate impact. His Equal Protection challenge therefore fails.

Adams also claims that his sentence -- life imprisonment without parole -- was so disproportionate to his offense that it constitutes a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause. In Solem v. Helm, 463 U.S. 277 (1983), the Supreme Court held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." Solem, 463 U.S. at 290. We have said that apart from capital sentencing a proportionality analysis is required only in those cases involving life sentences without parole. United States v. Melton, 970 F.2d 1328, 1336 (4th Cir. 1992). Because this case involves such a sentence, proportionality review is appropriate.

In Solem the Supreme Court offered several objective factors to guide courts in the determination of whether a sentence is proportional to the crime committed. First, we must consider the gravity of the offense and the harshness of the penalty. Id. Second, we look at the sentences imposed for other crimes within the same jurisdiction to determine whether the instant conduct is treated similarly to other crimes of comparable gravity. Id. at 291. And finally, we compare the sentences imposed in other jurisdictions for the same crime. Id.

The gravity of Adams' offense is heavy. We have stated that "[d]rug use, and the use of crack in particular, has become a pervasive, destructive force in American society." United States v. D'Anjou, 16 F.3d 604, 613 (4th Cir.), cert. denied, 114 S. Ct. 2754 (1994). There was considerable evidence that Adams managed a ring

5

of crack distributors by coordinating procurement, marketing, and distribution. Thus, the district court correctly characterized him as a "leader" and increased his offense level by four pursuant to U.S.S.G. § 3B1.1(a). Additionally, there was evidence that Adams possessed a dangerous weapon during the commission of the charged crime. Thus, the district court correctly enhanced his sentence by two levels pursuant to U.S.S.G. § 2D1.1(b)(1). In sum, the district court properly applied the Sentencing Guidelines which resulted in an offense level of 44 and which accurately reflected the gravity of the offense. Given the severity of the offense Adams committed, we cannot say that his punishment was disproportionately harsh. See United States v. Meirovitz, 918 F.2d 1376, 1381 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991).

Consideration of steps two and three of the Solem structure does not alter our conclusion. As we said in D'Anjou , "[b]ecause sentencing under the Federal Sentencing Guidelines involves the calculation of offense characteristics across criminal categories, it is difficult to undertake the type of comparative analysis that the pre-guidelines Solem decision advises." D'Anjou, 16 F.3d at 613. Nevertheless, circuit precedent instructs us (a) that a life sentence for a major drug violation is not disproportionate in comparison with other sentences under the Guidelines and (b) that the statutes of the states within this circuit impose similarly severe sentences for narcotics violations of the magnitude involved in this case. Id. Consequently, steps two and three of the Solem test are satisfied, and Adams' Eighth Amendment challenge fails.

V.

For the foregoing reasons, we affirm Adams' conviction and sentence.

AFFIRMED

6