**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-5006

WESLEY MILLER,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CR-97-77)

Submitted: July 7, 1998

Decided: August 3, 1998

Before WIDENER, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Omar J. Aboulhosn, SANDERS, AUSTIN, SWOPE & FLANIGAN,
Princeton, West Virginia, for Appellant. Rebecca A. Betts, United
States Attorney, Hunter P. Smith, Jr., Assistant United States Attor-
ney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Wesley Miller appeals the 33-month sentence he received after he pled guilty to conspiracy to commit mail fraud, 18 U.S.C. § 371 (1994). He contends that the district court erred in finding that Miller's was not an extraordinary case in which adjustments for both obstruction of justice, see USSG § 3C1.1,* and acceptance of responsibility should be given, see USSG § 3E1.1, comment. (n.4). We affirm.

Miller was president of the board of directors of the Big Creek Volunteer Rescue Squad ("Big Creek"), an unpaid position. Big Creek submitted invoices to the West Virginia Medicaid program through Quality Ambulance Service ("Quality"). From January 1992 through September 1994, apparently without Miller's knowledge, employees and officers of Big Creek billed Medicaid for a large number of unnecessary ambulance trips and for trips which never occurred. During 1994, in a separate scheme, Miller arranged with a Quality employee and two Big Creek employees, Diana Lambert and George Conorman, for Big Creek to receive a $5 "adminstrative fee" from each Medicaid payment for an ambulance run. From each $5 fee paid, Miller received $1.50. Over the course of the conspiracy, Miller received approximately $12,100.

Lambert initially deposited all the money in her account and then paid Miller and Conorman in cash. She reported this money as income on her tax return. In 1995, at her request, Miller paid Lambert $3100 to reimburse her for tax she had paid on the amount she disbursed to him. In 1996, Lambert began cooperating with an investigation of Big Creek being conducted by the West Virginia Medicaid Fraud Control Unit. She recorded four conversations with Miller in which he told her how to answer questions concerning the "administrative fee" if she were questioned about it by investigators or a grand jury. Miller urged Lambert to say that the money he had received was really hers, and that he had been keeping it for her. In October 1996,

_____

*U.S. Sentencing Guidelines Manual (1997).

2

Miller paid Lambert $9000 in cash and gave her a receipt for this amount as the balance of the money he received less the $3100 he had already reimbursed her.

Once he realized that he had been exposed, Miller entered into plea negotiations and entered a guilty plea to mail fraud. When interviewed by the government following his plea, Miller admitted engaging in the administrative fee scheme and admitted his obstructive conduct. At sentencing, he did not contest a recommended adjustment for obstruction of justice, but he argued that he should receive an adjustment for acceptance of responsibility because he had abandoned his attempt to obstruct the investigation once his conduct was known. Normally, conduct resulting in an adjustment for obstruction of justice precludes an adjustment for acceptance of responsibility, but in extraordinary cases both may apply. See USSG§ 3E1.1, comment. (n.4).

Miller relied on United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994), in which the Ninth Circuit held that a defendant may receive adjustments for both obstruction of justice and acceptance of responsibility when his obstructive conduct is "not inconsistent" with acceptance of responsibility. Under Hopper, the two adjustments are not inconsistent "when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." Id. Therefore, under Hopper, "as long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary one within the meaning of Application Note 4." Id. The district court declined to follow Hopper, found that Miller's was not an extraordinary case, and did not award him a reduction for acceptance of responsibility.

On appeal Miller urges that Hopper is consistent with this court's precedents and that this court has applied a " Hopper-like analysis," citing United States v. Miller, 77 F.3d 71, 75 (4th Cir. 1996) (failure to appear at sentencing); United States v. Murray, 65 F.3d 1161, 1166 (4th Cir. 1995) (perjury during co-defendant's trial); United States v. Melton, 970 F.2d 1328, 1335 (4th Cir. 1992) (attempt to escape); United States v. Hicks, 948 F.2d 877, 885 (4th Cir. 1991) (defendant who threw cocaine from car during chase and lied to probation officer

3

about his financial resources but cooperated to a high degree with arresting officers earned both adjustments). However, our review of the cases Miller relies on reveals that each determination was made on a case-by-case basis, without adopting the Hopper approach or any rule to be applied in all such cases. Consequently, we find that the district court did not clearly err in finding that Miller's case was not extraordinary and in refusing to award him an adjustment for acceptance of responsibility.

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4