**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4178

MIGUEL A. FLORES,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CR-96-806)

Argued: September 22, 1999

Decided: October 29, 1999

Before MURNAGHAN, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinon.

_____

**COUNSEL**

**ARGUED:** Louis H. Lang, CALLISON, TIGHE, ROBINSON &
HAWKINS, L.L.P., Columbia, South Carolina, for Appellant.
Rebecca K. Troth, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee. **ON BRIEF:** Bill Lann Lee, Acting
Assistant Attorney General, Dennis J. Dimsey, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C.; J. Rene Josey,
United States Attorney, Marshall Prince, Assistant United States
Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Miguel A. Flores appeals the 180-month sentence imposed upon his convictions of: six counts of holding others in involuntary servitude; six counts of collection of extensions of credit by extortionate means; six counts of transporting illegal aliens within the United States; concealing and harboring illegal aliens; transporting migrant farm workers in unsafe vehicles; and conspiracy to commit these crimes.[1] We affirm.

I.

Flores ran a business that provided agricultural workers to plant and harvest crops in the area around Manning, South Carolina. Two of Flores's employees, Nolasco Castaneda and Andre Ixcoy, recruited undocumented migrant farm workers who spoke little or no English and had little education. The workers were transported from the Mexican border to South Carolina in vans that had been modified to hold up to twenty-six men. During the trip from Arizona to South Carolina, the workers usually were not allowed to leave the vans.

_____

[1] Flores was convicted on his guilty pleas to the following charges:

(a) Count One -- conspiracy, pursuant to 18 U.S.C. § 371;

(b) Counts Two through Seven -- involuntary servitude, pursuant to 18 U.S.C. § 1584;

(c) Counts Eight through Thirteen -- collection of extensions of credit by extortionate means, pursuant to 18 U.S.C. § 894;

(d) Counts Fifteen through Twenty-one -- transporting or harboring certain aliens, pursuant to 8 U.S.C. § 1324(a)(1)(C);

(e) Count Twenty-two -- transporting certain aliens by unsafe means, pursuant to 29 U.S.C. § 1841.

2

The workers were taken to several labor camps near Manning. The main camp was in a secluded area, surrounded by woods and marshes. The only exit from the camp was an unlit, unpaved lane running to the main road.

Upon arrival in South Carolina, Flores extended credit to the workers. The workers were informed that they had to work for the Flores operation for as long as it took to pay off a smuggling fee, through deductions from their pay. This prolonged the length of the workers' servitude. Workers were told that anyone who attempted to leave the camps would be hunted down and killed. Additionally, Flores and others intimidated the workers by brandishing and sometimes discharging firearms.

On approximately June 19, 1992, Flores and a supervisor, Sebastian Gomez, beat migrant worker Antonio Perez as punishment for his complaints about the camp conditions. Ramon Pena attempted to intervene, and Flores struck him in the head with a semi-automatic pistol. Pena was hospitalized until June 26 with severe contusions and lacerations to his head.

II.

Flores entered his guilty plea with the understanding that he could appeal his sentence. Subsequently, he entered into an "Addendum to Plea Agreement" that contained a clause purporting to waive, inter alia, his appellate rights. At Flores's sentencing hearing, the court gave counsel an opportunity to discuss the Addendum with Flores. However, there was no rearraignment and the district court did not question Flores directly about his understanding or acceptance of the appeal waiver. Neither Flores nor his counsel confirmed to the court that Flores understood the waiver's significance. We do not decide the thorny issue of whether Flores effectively waived his right to appeal his sentence[2] because, in any event, Flores's arguments on the merits are without substance.

_____

[2] At oral argument, counsel for the Government represented that, if the merits of Flores's appeal are considered, the Government will not seek to vacate the two-point reduction in Flores's offense level that he received upon the Government's recommendation, pursuant to terms of the Addendum.

3

III.

Flores claims that the district court improperly increased his offense level on Counts Eight through Thirteen by five levels because he discharged a firearm. See USSG § 2E2.1(b)(1)(A) (1991).[3] We review the district court's factual findings at sentencing for clear error. See United States v. Melton, 970 F.2d 1328, 1331 (4th Cir. 1992).

Flores admits that firearms were discharged -- evidently, in the fields and at night -- but contends that they were not related to any offense conduct, including the extortion counts. Relevant conduct for the determination of the challenged specific offense characteristic includes all acts committed, aided, abetted, counseled, induced, or willfully caused by the defendant, and all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity, where those acts occurred during the preparation for or the commission of the offense. See USSG § 1B1.3.

It may reasonably be inferred that displaying firearms contributed to a climate of fear prevailing in the camps; the admitted discharge of firearms made this threat all the more real, and thus facilitated Flores's extortion scheme. We therefore conclude that there was no clear error in increasing the offense level by five levels pursuant to § 2E1.1(b)(1)(A).

IV.

Flores also contends that the district court erred when it enhanced his sentence because Pena sustained serious bodily injury. See USSG

_____

[3] The 1991 version of the guidelines was applied in this case, because it was less punitive than the version in effect at the time of sentencing. However, Flores contends that he should have the benefit of the amended guideline, which provides for a three-level reduction in offense level for acceptance of responsibility rather than the two-level reduction in effect in 1991. See USSG § 3E1.1 (1997). Flores's argument has no merit. "The court shall not apply . . . one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual." USSG § 1B1.11(b)(2) (1997).

4

§ 2E2.1(b)(2)(B). Pena was named in the conspiracy count but not identified as a victim of Flores's extortion. At sentencing, the district court found that Flores beat Pena when Pena tried to stop Flores and Gomez from beating Perez, a named extortion victim. The court noted that Pena's injuries were so severe that he was hospitalized for seven days.

The district court found that the enhancement was proper, because Pena was a named victim of the conspiracy. The court observed that not only was Pena beaten, but Flores, in furtherance of the conspiracy to extort and to hold others in servitude, attempted to conceal from authorities how Pena sustained his injuries.

We conclude that the enhancement for serious bodily injury was proper. The conspiracy count was grouped with the count charging Flores with extortion from Perez. In sentencing for a conspiracy offense, the base offense level is determined by reference to the guideline for the substantive offense, which in this case is extortion, plus "any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." USSG § 2X1.1(a). Because Pena was a victim of the conspiracy, it was appropriate to enhance Flores's sentence to reflect Pena's injuries.

V.

Pursuant to the foregoing, we reject Flores's arguments on their merits, and affirm the sentence imposed on his multiple convictions.

AFFIRMED

5