Joseph CODE, Petitioner-Appellant,

v.

Charles M. MONTGOMERY and Arthur
K. Bolton, Respondents-Appellees.

No. 82–8360.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1984.

Jane Nothmann (court appointed), Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondents-appellees.

Before TJOFLAT, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

In these habeas corpus proceedings, the petitioner, Joseph Code, claims that his state court conviction for armed robbery is invalid because (1) his trial attorney rendered ineffective assistance of counsel, in violation of the sixth and fourteenth amendments, and (2) the procedures the prosecutor employed to obtain petitioner's in-court identification as the perpetrator of the armed robbery were unnecessarily suggestive, in violation of the due process clause of the fourteenth amendment. The district court denied these claims without an evidentiary hearing. We affirm the district court as to petitioner's due process claim, because the transcript of petitioner's trial indicates that his identification was reliable. We remand petitioner's ineffective assistance of counsel claim to the district court for an evidentiary hearing, however, because critical factual issues underlying that claim have not been resolved.

I.

On April 1, 1974, four men robbed Doc Gibson at his home in Decatur County, Georgia. The robbery occurred late in the afternoon. The robbers, armed with a shotgun, forced their way into Gibson's residence, subdued Gibson's wife, Chris, and daughter, Diane, and tied them up in an upstairs bedroom. Gibson arrived at the house a short time later. When he entered the front door, one of the men shot and wounded him. The men demanded his money, and he took one of them to the safe in his garage and gave him its contents. With that, the men left. A few days later, the police apprehended two of the robbers, Sammy Bell and Warren Smith, and charged them with the Gibson robbery. They were subsequently tried and convicted.

On October 11, 1976, petitioner was arrested in Macon, Georgia, charged with forgery, and detained in jail. Before he could obtain admission to bail the Sheriff of Decatur County served him with an arrest warrant for the Gibson robbery. On December 4, 1976, the Sheriff took petitioner into custody and transferred him to the Decatur County jail at Bainbridge, Georgia. On December 6, he was arraigned on the armed robbery charge, and his trial was scheduled for Monday, December 13. Petitioner asked that a lawyer be appointed to defend him because he was indigent and could not afford a lawyer. The court granted his request and appointed George W. Stacy to represent him.

Stacy's first, and only, pretrial contact with petitioner took place on Friday, December 10, at the Decatur County jail.[1] The meeting lasted about forty minutes.

---

1. Stacy asserted during petitioner's habeas corpus proceedings in the Superior Court of Tattnall County, Georgia, that he met petitioner for the first time on April 1, 1976. Petitioner claims they met, for the first and only time prior to trial, on December 10, 1976. The court did not resolve this factual conflict.

It appears unlikely that the April 1, 1976, date could be accurate. Petitioner was not arrested until October 11, 1976, and was not taken to Bainbridge, Georgia, until December 4, 1976. There is nothing in the record to indicate that there was any reason for a court to have appointed an attorney to represent petitioner prior to October 11, 1976, at the earliest. It is thus likely that Stacy confused the date of the robbery, April 1, 1974, with the date he said he first met petitioner.

Regardless of when Stacy and petitioner first met, however, the record makes it clear that Stacy did nothing with respect to petitioner's case until his December 10, 1976, meeting with petitioner.

Petitioner told Stacy that he was innocent of the charge and, moreover, that he had an alibi; on the afternoon of the robbery he was working in Macon, as the desk clerk at the Central Hotel. He told Stacy that his girlfriend and two hotel employees could verify this, and asked Stacy to contact them. He also asked Stacy to call his mother, who lived in Macon and knew how to locate his girlfriend. Petitioner claims that Stacy refused to communicate with any of these witnesses or to subpoena them for trial. Stacy claims, as he testified later during petitioner's state habeas corpus proceedings, that he made a diligent attempt to subpoena petitioner's alibi witnesses, but was unable to determine their whereabouts so that subpoenas could be served. In any event, when petitioner's trial commenced none of these witnesses were present in court.

The record does not contain a transcript of the proceedings that took place on the first day of trial prior to the swearing in of the prosecution's first witness; the testimony petitioner gave at his state habeas hearing is the only account we have of the proceedings before the first witness was sworn. According to petitioner, before his trial commenced he asked Stacy to move the court for a continuance, so that he could prepare petitioner's defense and subpoena the alibi witnesses from Macon, but Stacy refused to move for a continuance. Petitioner claims that he then asked the court for a continuance, but was unsuccessful. Thereafter, the trial began.

The State called five witnesses to the stand: the Gibsons, Doc, Chris and Diane, one of the robbers, Sammy Bell, and the investigating police officer. The Gibsons described the robbery in detail. Doc and Diane Gibson identified petitioner as one of the robbers; Chris Gibson was unable to make an identification. Sammy Bell fully corroborated the Gibsons' description of the events, and identified petitioner as one of his accomplices. The investigating officer testified briefly to the investigation of the crime.

Petitioner was the only defense witness. His testimony was brief; he simply denied having committed the robbery. Petitioner did not offer an alibi, and neither Stacy, on direct examination, nor the prosecutor, on cross-examination, asked him where he was on the day in question. The jury, apparently rejecting petitioner's plea of innocence, found him guilty as charged.

■ Petitioner appealed his conviction to the Georgia Supreme Court, contending that the evidence was insufficient to support the jury's verdict, and that the trial judge erred in refusing to charge the jury that the testimony of an accomplice should be viewed with skepticism. His conviction was affirmed. *Code v. State,* 239 Ga. 644, 238 S.E.2d 430 (1977). Petitioner, proceeding pro se, then petitioned the Superior Court of Wayne County, Georgia, for a writ of habeas corpus. While his petition was pending, he escaped from custody, and his petition was dismissed. Following his recapture, he petitioned the district court for a writ of habeas corpus, but the court dismissed his petition for failure to exhaust his state remedies. Petitioner returned to state court, this time seeking habeas relief in the Superior Court of Tattnall County, Georgia. He claimed that his conviction was invalid because (1) he had been denied his sixth and fourteenth amendment right to the effective assistance of counsel, and (2) his identification at trial was tainted and violated due process because (a) he was not afforded a pretrial lineup and (b) the prosecutor's identification procedure at trial was unduly suggestive.[2]

The court convened an evidentiary hearing to consider these claims. Petitioner, appearing without counsel, presented his case, and testified. The thrust of his testimony was that his attorney, Stacy, had

---

**2.** The claims are not set forth so clearly in petitioner's pro se petition; however, this states the substance of what he alleged and what the state habeas judge addressed in his dispositive order. Claims presented pro se are

held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, *reh'g denied* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972).

refused to contact his alibi witnesses—his girlfriend and his two fellow employees at the Central Hotel—who, petitioner insisted, would have testified that he was working at the hotel at the time of the robbery. The State countered with Stacy's testimony, presented in the form of written interrogatories and answers. Stacy's position was that he attempted to contact petitioner's alibi witnesses by telephoning his mother, as petitioner had suggested, but she could not tell him how to locate them.

The Superior Court, concluding that Stacy's performance satisfied the Constitution and that petitioner's in-court identification was not tainted, denied habeas relief. Petitioner sought appellate review, but the Georgia Supreme Court refused to issue a certificate of probable cause to appeal.

Petitioner then instituted these habeas corpus proceedings in the district court, presenting the same claims he had presented to the Superior Court of Tattnall County and an additional unexhausted claim, that the delay between the robbery and his arrest and trial violated his constitutional right to a speedy trial. He requested an evidentiary hearing. The court denied his request, concluding that an evidentiary hearing was unnecessary to resolve any of petitioner's claims. The court held that a hearing was not needed to determine petitioner's ineffective assistance of counsel claim because the state habeas hearing was full and fair, the state court found the dispositive facts, and no constitutional violation was shown. A hearing was not necessary on petitioner's in-trial identification claim because the record of petitioner's criminal trial demonstrated conclusively that petitioner's identification was not tainted. As for petitioner's speedy trial claim, the court concluded that it was meritless and required no hearing. Petitioner appeals. At oral argument, his counsel abandoned as frivolous petitioner's admittedly unexhausted speedy trial claim.[3] We thus address his two exhausted claims, dealing first with his in-court identification.

## II.

Petitioner contends that his in-court identification was unconstitutionally tainted because of a combination of factors: (1) the prosecution failed to conduct a pretrial line-up; (2) petitioner was taken to the courtroom and placed at the defendant's table while the prosecution witnesses were present; (3) the prosecutor educed petitioner's identifications in a suggestive manner as petitioner sat at the defense table; and (4) the prosecution's witnesses were not sequestered. The state habeas court made no findings of fact in connection with petitioner's claim that the procedures employed by the prosecution to obtain petitioner's identification were unnecessarily suggestive. The court stated only:

> The evidence submitted by the testimony of the Petitioner does not show that [sic] the in-court identification to be unnecessarily suggestive and conductive [sic] to permit an irreparable mistaken identification especially since three of the four witnesses, including a co-defendant, identified the Petitioner as being the perpetrator of the armed robbery.

Since the record of petitioner's trial is silent as to the facts underlying this claim, the state habeas court made no findings thereon, and the district court conducted no evidentiary hearing, in order to affirm the district court's disposition of this claim we must assume petitioner's statement of facts to be correct. We agree with the state court that even taking as true the facts alleged by petitioner, his in-court identification was sufficiently reliable to convict him.

■ In order for petitioner to prevail, he must convince us that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), *cited in Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). In making

---

**3.** We are thus faced with a petition containing only exhausted claims and can rule on them.

*See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

our determination, we must consider the totality of the circumstances, including

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199–200, 93 S.Ct. at 382.

■ In this case, the three witnesses who identified petitioner, Doc Gibson, his daughter, and the accomplice, had substantial opportunity to observe him at the time of the robbery. The accomplice was with petitioner for several hours before the robbery. The criminal episode lasted over an hour; the robbers had to wait for Doc Gibson to arrive. Doc Gibson was shot by one of the men, and took the man he identified in court as petitioner to his safe to give him its contents. Certainly his attention was focused on petitioner and his accomplices. Gibson in fact made the most positive identification of petitioner, among the three victims. As for the accomplice, he spent several hours with petitioner on the day of the crime and had been with him on an earlier occasion. The accomplice clearly had ample opportunity to observe petitioner. In sum, given the witnesses' opportunity to view the robbers, their identification carried with it no "very substantial likelihood of misidentification."

■ It is unfortunate that no pretrial identification procedures were undertaken, as they would have ensured the reliability of petitioner's in-court identification. However, failure to hold a pretrial lineup does not violate due process.[4] Neither did the prosecutor's actions render the identification unnecessarily suggestive. In asking

the witnesses to identify petitioner, the prosecutor stated:

To Diane Gibson, "I ask you whether or not you saw the defendant Joseph Sonny Code [at the house], that day?" ... "There's no question in your mind about that?"

To Doc Gibson, "Have you ever seen Sonny since then?" ... "Not until today?" ... "You see him today?"

To Sammy Lee Bell, "And the Sonny that you are talking about is the defendant, Joseph Sonny Code?"

■ Petitioner argues that *United States v. Warf,* 529 F.2d 1170 (5th Cir.1976), controls this case and renders the prosecutor's questions impermissibly suggestive. In *Warf,* however, the prosecutors pointed at the table where the defendant sat and asked the witness "Is [Ted Warf] in the Courtroom? Is he over at this table where ...?" Shortly after these questions, the prosecutor, contrary to the trial judge's instructions, brought out that the defendant, Warf, had been in prison before. The panel majority found the two prosecutorial errors, taken together, to be sufficient to violate the defendant's due process rights, in part because the evidence against the defendant was otherwise skimpy.

The prosecutor did not point out petitioner to the witnesses here. While the prosecutor would have done better never to have mentioned the petitioner in his request for identification of the perpetrator, he did not use this type of question to all of the witnesses. The prosecutor's questions to Doc Gibson were perfectly acceptable, and clearly allowed the witness to make his own identification. Further, the prosecutor committed no other indiscretions of the type set out in *Warf. Warf* does not require us to find petitioner's identification

---

4. We find no support for petitioner's argument that he had a right to a pretrial lineup. *See Branch v. Estelle,* 631 F.2d 1229, 1234 (5th Cir.1980) (in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981); *United States v. Poe,*

462 F.2d 195, 198 (5th Cir.1972). Indeed, independently reliable in-court identification can even "cure" unconstitutionally suggestive out-of-court identifications. *See United States v. Sutherland,* 428 F.2d 1152 (5th Cir.1970), *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972).

the product of an impermissibly suggestive proceeding.

■ Failure to sequester the witnesses did not render the identification unconstitutional. Petitioner cites *Brown v. Blackburn,* 625 F.2d 35 (5th Cir.1980), as support for his argument that sequestration was required. In *Brown,* the witness was a fifteen-year-old boy who was in the same room with another boy when the other boy identified one out of five photographs as the perpetrator. In this case, the witnesses were adults; the first witness failed to make an identification; and the two witnesses with the greatest opportunity to observe petitioner were put on the stand last, rendering their identification of him less suggestive than if the person with the greatest chance to observe identified him first, tempting the other witnesses to trust his judgment. We do not believe that a failure to sequester the witnesses, considering as we must the totality of the circumstances surrounding the identification, would have created a substantial likelihood of misidentification.[5]

### III.

■ We next address petitioner's ineffective assistance of counsel claim. Petitioner alleges that his counsel was ineffective in failing to investigate, and to present at trial, his only line of defense, the alibi that he was at work in Macon.[6] This allegation, if true, could constitute ineffective assistance of counsel. *See Gomez v. Beto,* 462 F.2d 596 (5th Cir.1972).

We cannot decide this claim, however, because neither the state habeas court, which conducted an evidentiary hearing, nor the district court, which did not, made the factual findings necessary to decide the claim. The state court made the following "findings of fact and conclusions of law":

> The trial counsel, George W. Stacy, certainly fulfills the constitutional requirements [for effectiveness, that he be "reasonably likely" to render effective assistance,] as the attorney testified that in his opinion, as a practicing attorney for approximately thirty-four (34) years, that he had sufficient time to adequately prepare the [petitioner's] defense. Attorney George W. Stacy further testified that he made an effort to procure the witnesses for the [petitioner's] case, but was unable to do so as the mother of the [petitioner] was unable to appear and he could not locate the other witness for the [petitioner]. The court therefore finds that the contentions of the [petitioner] is [sic] without merit and denies the relief prayed for in the petition on this ground.

We note that for the most part this statement consists of one finding of fact: that Stacy *testified* that he had been practicing 34 years; that he made an effort to procure the witnesses for petitioner's case but was unable to locate them through his phone call to petitioner's mother; that petitioner's mother was unable to appear; and that Stacy had adequate time to prepare for trial. The state court could not have meant that, as a fact, Stacy could not have located the girlfriend. Certainly Stacy could have gone back to petitioner to ask him her name. The phone call was the only step Stacy took to seek out witnesses; the court could not have found that he did anything further. We also note that the state court applied a different standard than the one the Constitution commands: whether counsel was "reasonably likely to render *and rendered*" effective representation. *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir. 1974).

---

**5.** We note that petitioner's counsel could have avoided this problem by requesting sequestration of the witnesses. We would not wish to create a situation where counsel can later obtain a writ of habeas corpus on improper in-court identification grounds simply by failing to do his duty.

**6.** The failure to investigate witnesses allegedly provided by petitioner or information provided concerning petitioner's job was, according to petitioner, compounded by counsel's failure to get back in touch with petitioner upon reaching a blind alley, and to move for a continuance when, at trial, counsel finally let petitioner know that he had not reached any of his alibi witnesses.

In order to evaluate petitioner's claim, it is vital to know at least (1) what, if anything, petitioner told his lawyer about his employment at the Central Hotel in Macon, (2) whether the unnamed "witness from Macon" counsel says in his deposition that petitioner asked him to subpoena was one of two hotel employees whose names petitioner states that he gave to counsel, and (3) whether petitioner tried to move for a continuance once counsel refused to request one. Counsel's deposition testimony submitted to the state habeas court was so sketchy that, even taking it as true, these questions of fact are unanswered.

It would be possible, in some cases, for a single telephone call to be all the investigation counsel needed to undertake for his client. We cannot know, until the facts are unearthed, whether this case required of counsel more investigation.

We note that petitioner has colorably demonstrated the prejudice we require in ineffective assistance of counsel cases, *see Washington v. Strickland,* 693 F.2d 1243, 1258–63 (11th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), in the affidavit of Estella Taylor, which he attached to his petition to the district court. She swore that she would have testified at his trial that he was with her when the robbery took place.

For the foregoing reasons, we remand the case to the district court for an evidentiary hearing on petitioner's ineffective assistance of counsel claim. The decision of the district court is otherwise affirmed.

AFFIRMED in part; VACATED in part and REMANDED.