**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Wise MURRAY, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Misjaanda Diszelle JOHNSON, Defendant–Appellant.**

Nos. 94–5500, 94–5627.

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1995.

Decided Sept. 21, 1995.

**ARGUED:** Langdon Dwight Long, Assistant Federal Public Defender, Columbia, SC; James Paul Rogers, Columbia, SC, for appellants. David Jarlath Slattery, Assistant United States Attorney, Columbia, SC, for appellee. **ON BRIEF:** J. Preston Strom, Jr., United States Attorney, Columbia, SC, for appellee.

Before WIDENER and WILLIAMS, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WIDENER and Senior Judge HEANEY joined.

## OPINION

WILLIAMS, Circuit Judge:

In this appeal we consider what constitutes an express threat of death during a robbery under the Sentencing Guidelines, U.S.S.G. § 2B3.1(b)(2)(F),[1] and address several other trial and sentencing issues. A five count indictment charged William Wise Murray with the October 1993 armed bank robbery (Count 1) of the Columbia Teachers Federal Credit Union in Columbia, South Carolina, in violation of 18 U.S.C. §§ 2 and 2113(a) and (d) (1988). The indictment also charged Murray and Misjaanda Diszelle Johnson with the unarmed bank robberies of three other banks in Columbia (Counts 2–4) between November 5 and 19, 1993, and one attempted

unarmed bank robbery (Count 5) of a bank in West Columbia, South Carolina, on November 22, 1993, all in violation of 18 U.S.C. §§ 2 and 2113(a). Johnson pleaded guilty to Counts 2–5, and on appeal challenges the sentence imposed against her. Murray went to trial, and a jury convicted him of armed bank robbery but acquitted him of the remaining unarmed robbery charges. On appeal, Murray raises several evidentiary issues and also challenges the sentence imposed against him by the district court. Finding no error, we affirm.

## I.

Johnson was arrested immediately after an attempted bank robbery on November 22, 1993. She admitted in a signed statement to F.B.I. agents that she and Murray had planned the four unarmed robberies between November 5 and November 22 and that Murray had driven her to each one and had picked her up after the first three robberies. The agents telephoned Murray at a number provided by Johnson. Murray voluntarily came in for questioning and orally confessed that he had driven Johnson to the four bank robberies in November. Murray also told the agents of another robbery not mentioned by Johnson when he confessed that, in October, Johnson helped him commit a bank robbery during which he used a toy gun. Murray refused to sign a written statement of his confession, but evidence of his oral statement was later admitted at his trial. A sawed-off shotgun recovered from Johnson's belongings also was admitted as evidence at Murray's trial. We first address Johnson's claims of sentencing error and then Murray's trial and sentencing challenges.

## II.

On August 12, 1994, the district court sentenced Johnson to 121 months on each of the four unarmed robbery counts, to be served concurrently.[2] Johnson challenges the dis-

---

1. United States Sentencing Commission, *Guidelines Manual*, § 2B3.1(b)(2)(F) (Nov.1993).

2. The district court sentenced Johnson to the top end of the 97—121 month range under the Sentencing Guidelines for her criminal history cate-

gory of I and a combined, or total, offense level of 30. U.S.S.G. § 5A (Sentencing Table). Johnson received her highest offense level for Count 2, the November 5, 1993, robbery of the Nations-Bank branch office on Millwood Avenue in Co-

trict court's findings that she obstructed justice, that she did not accept responsibility for her actions, and that she made an express threat of death during one robbery.

### A.

The district court found that Johnson committed perjury during Murray's trial, and enhanced her sentence two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Johnson challenges this enhancement on the basis that the district court failed to make a specific finding addressing each element of her alleged perjury as set forth in *United States v. Dunnigan*, — U.S. —, —, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993) ("[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding."). However, the language upon which Johnson relies is precatory rather than mandatory. Indeed, a district court's enhancement of a sentence for perjury is sufficiently supported if the court's finding of obstruction "encompasses all of the factual predicates for a finding of perjury." *Id.* Thus, the enhancement is warranted when the district court finds that a defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* at —, 113 S.Ct. at 1116. Whether Johnson committed perjury is a factual determination made by the sentencing court which we review for clear error. *United States v. Brooks*, 957 F.2d 1138, 1148 (4th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992).

The record reflects, and the district court properly found, that Johnson willfully gave false testimony concerning a material matter during Murray's trial. In a signed confession Johnson stated that Murray was involved in the same robberies to which she later pleaded guilty. Nevertheless, at Murray's trial Johnson testified that she could not remember making any statement about Murray's involvement. She claimed that her memory was impaired because she was high on crack cocaine when she was arrested. Johnson also disavowed her signature on her written confession. The district court made several assessments of Johnson's credibility and specifically found that Johnson lied when she denied having signed the confession. The district court also disbelieved Johnson's testimony that she did not remember confessing, and found that Johnson "obstructed justice either by giving incorrect information to the police or else [by] lying on the [witness] stand." (J.A. 296.) *See United States v. Barnett*, 939 F.2d 405, 408 (7th Cir.1991) (whether defendant lied under oath about her confession or "simply remembered incorrectly the events during the taking of her confession" is a credibility determination to be made by the sentencing court). The court also found that, based upon other credible contradictory evidence, Johnson perjured herself by denying she was carrying Murray's child. Because these factual findings are supported by the record, we conclude that the district court did not err in enhancing Johnson's sentence for obstruction of justice.

### B.

Johnson next argues the district court erred by denying her a two level decrease in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1 for having admitted she committed the robberies. We defer to the sentencing court's factual determination because it "is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 5). The Sentencing Guidelines commentary provides that an obstruction enhancement normally indicates the defendant has not accepted responsibility for her crimes. *Id.*, comment. (n. 4). Furthermore, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to

lumbia. The district court calculated a base offense level of 20 for the violation of 18 U.S.C. § 2113(a) under Count 2, then increased the base offense level by 6 levels as follows: two points for taking the property of a financial institution under § 2B3.1(b)(1); two points for making an express threat of death under 2B3.1(b)(2)(F); and two points for obstructing justice by committing perjury under § 3C1.1. The combined offense level of 30 for all four counts was calculated by taking the offense level applicable to the group with the highest offense level (Count 2, offense level 26) and increasing the offense level by four levels pursuant to U.S.S.G. § 3D1.4.

be true has acted in a manner inconsistent with acceptance of responsibility." *Id.*, comment. (n. 1(a)). Although Johnson claims she accepted responsibility for her crimes by pleading guilty, during Murray's trial she denied her earlier statement that he participated in the robberies. The district court determined that Johnson thereby intentionally misled law enforcement officers. Based on the propriety of the obstruction enhancement, we conclude that the district court did not err in determining that Johnson should not receive a downward adjustment for acceptance of responsibility. *United States v. Melton*, 970 F.2d 1328, 1335 (4th Cir.1992) (obstruction finding supports denial of reduction for acceptance of responsibility).

### C.

 Finally, Johnson challenges her two level sentence enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F) for making an "ex-

press threat of death" during a robbery even though she was actually unarmed.[3] After demanding money during the November 5th robbery, Johnson told the teller: "Give me three stacks of $20's. Don't give me a dye pack. I have a gun pointed at you." (J.A. 245.) When the teller was slow to respond, Johnson queried: "You think I'm playing?" *Id.* The district court, with opportunity to assess evidence of Johnson's demeanor and the tone of the words used, relied on the intent of the Sentencing Guidelines to find that such a threat was an express threat of death because it would "instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery." U.S.S.G. § 2B3.1 comment. (n. 6).[4]

 Because Johnson contends the district court incorrectly applied the express

---

**3.** Johnson, relying on two Eleventh Circuit decisions, *United States v. Canzater*, 994 F.2d 773 (11th Cir.1993), and *United States v. Moore*, 6 F.3d 715 (11th Cir.1993), argues that the statement "I have a gun" may imply a threat to use the gun to frighten or wound, but is not specific enough to be considered an express threat of death under the Sentencing Guidelines. In *Canzater*, the Eleventh Circuit reversed a threat-of-death enhancement, holding that the robber's note to a bank teller indicating he had a gun, while simultaneously reaching into his waistband, did not create an express threat of death. *Canzater*, 994 F.2d at 775. Relying on its seminal case of *United States v. Tuck*, 964 F.2d 1079, 1081 (11th Cir.1992), the Eleventh Circuit stated that the enhancement for making an express threat of death "is appropriate only when the threat of death is express, meaning directly or distinctly stated, and not when the threat is implied or left to inference." *Canzater*, 994 F.2d at 775. No other circuit has adopted this narrow interpretation of the enhancement. The Eleventh Circuit's strict interpretation ignores the guidelines commentary, which indicates that a direct implication of death may warrant enhancement. U.S.S.G. § 2B3.1 comment., n. 6 (noting, e.g., that the statement "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)" may create express threat of death). Moreover, "2B3.1(b)(2)(F) does not require that the defendant state that he intends to kill the teller if his demands are not met." *United States v. Strandberg*, 952 F.2d 1149, 1151 (9th Cir.1991) (upholding adjustment based on warning "not to pull the alarm 'or my friend will start shooting'"). In *Moore*, which also relied on *Tuck*, an unarmed robber gave the bank teller a note stating "I HAVE A GUN AND NOTHING TO LOSE. 100s

AND 50s *NO DYE MONEY.*" *Moore*, 6 F.3d at 721. The Eleventh Circuit reversed the threat-of-death enhancement, noting this "demand was the type that would instill in a reasonable person the type of fear ordinarily associated with a robbery," *id.*, rather than instilling the "significantly greater fear" required for enhancement by the guidelines commentary, U.S.S.G. § 2B3.1 comment., n. 6. Despite citing the objective test of the guidelines commentary, the court relied upon the subjective response of the teller-victim: "the teller exhibited composure and not fright." *Moore*, 6 F.3d at 721.

A robber need not be armed in order to make an express threat of death. Whether a bank robber actually has a gun during the robbery is immaterial to the express threat of death determination, *United States v. Hunn*, 24 F.3d 994, 997 n. 5 (7th Cir.1994), because an unarmed robber may make an express threat of death, *United States v. Smith*, 973 F.2d 1374, 1378 (8th Cir.1992), as may an armed robber when the victim is unaware that the robber has a weapon, *United States v. Robinson*, 20 F.3d 270, 276–77 (7th Cir.1994). The crucial determination, as we discuss below, is whether a reasonable victim would fear for his or her life because of the robber's actions.

**4.** Commentary to the Sentencing Guidelines may be used to determine the Commission's intent in drafting a specific guideline. "'Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution, or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Nelson*, 6 F.3d 1049, 1056 (4th Cir.1993) (quoting *Stinson v.*

threat of death enhancement, we apply the "due deference" standard of review under 18 U.S.C. § 3742(e)(2). *United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989). Under that standard, we review *de novo* the district court's "legal interpretation of guidelines terminology and the application of that terminology to a particular set of facts." *United States v. Toler,* 901 F.2d 399, 402 (4th Cir.1990). For the reasons expressed below, we agree with the district court, and find no error in its determination that Johnson made an express threat of death as defined in the robbery guideline.

Our holding is supported by the explanatory language of application note 6 to the commentary to § 2B3.1, which states:

An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

U.S.S.G. § 2B3.1 comment., n. 6. The language used by Johnson is practically indistinguishable from the commentary example, "Give me the money or I will shoot you." A bank robber who unequivocally demands money and states a gun is pointed at the teller has threatened to shoot the teller. Thus, we conclude that a threat to shoot a firearm at a person during a robbery, created by any combination of statements, gestures, or actions that would put an ordinary victim in reasonable fear for his or her life, is an express threat of death under § 2B3.1(b)(2)(F), even though the person delivering the threat is not in possession of a firearm. In so holding we adhere to the interpretation of "express threat of death" adopted by the majority of other circuits that have addressed this issue. *See United States v. France,* 57 F.3d 865, 867 (9th Cir.1995) (robber's statement that he had dynamite was express threat of death because it would generate "significantly greater fear" in reasonable victim); *United States v. Hunn,* 24 F.3d 994, 997 & n. 5 (7th Cir.1994) (noting that whether robber actually had a gun is immaterial because "pointing one's hand, hidden in a coat so as to imitate the presence of a handgun aimed at another, is well within the plain text of § 2B3.1(b)(2)(F) and its accompanying commentary."); *United States v. Robinson,* 20 F.3d 270, 276–77 (7th Cir. 1994) (bank robber's threat "I have a gun and am not afraid to use it" supported § 2B3.1 enhancement even when teller was unaware of robber's toy gun); *United States v. Lambert,* 995 F.2d 1006, 1008 (10th Cir.) (statement that "the person behind me will shoot someone" constitutes an express death threat), *cert. denied,* —— U.S. ——, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Smith,* 973 F.2d 1374, 1378 (8th Cir.1992) (combination of statement "You don't want to find out" and robber's gestures placing right hand under coat was express threat of death because actions instilled greater fear than necessary to carry out the robbery). Johnson's unequivocal statement that she had a gun pointed at her victim and her further admonition that she was not playing constitutes an express threat of death because it would place an ordinary person in the victim's position in reasonable apprehension for his or her life, thus instilling greater fear than necessary to commit the robbery.

For the above reasons, we affirm Johnson's sentence.

### III.

Murray raises several challenges to his conviction for armed robbery of the credit

*United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993)), *cert. denied,* ——

U.S. ——, 114 S.Ct. 2142, 128 L.Ed.2d 870 (1994).

union on October 25, 1993. Specifically, he contends that his in-court identification by eyewitnesses was improper, that the district court erred by allowing testimony about an oral confession Murray made to investigators, and that the court erred by admitting a sawed-off shotgun into evidence. He also challenges the district court's finding during sentencing that he made an express threat of death, and its decision to depart above the applicable Sentencing Guidelines range based on the dangerousness of the weapon.

## A.

■ Murray first challenges the in-court identifications of him by three eyewitnesses, arguing that these identifications in each case were tainted by an earlier, unduly suggestive identification procedure. For trial identifications, "reliability is the linchpin." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Thus, we look at the totality of the circumstances to determine "[w]hether an in-court identification is so unreliable so as to require suppression of the identification." *United States v. Hughes*, 716 F.2d 234, 241 (4th Cir.1983). A district court's decision to admit eyewitness testimony, as any evidentiary ruling, is "entitled to substantial deference" and may only be reversed if the court clearly abused its discretion. *See United States v. Russell*, 971 F.2d 1098, 1104 (4th Cir.1992), *cert. denied*, ─── U.S. ───, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993).

■ Six weeks after the robbery, Annette Sanders, the credit union teller, selected Murray's photograph from a photo line-up of six individuals. She later positively identified Murray at trial as the robber. During a pre-trial motion to suppress, Murray argued that the photo line-up was unduly suggestive because "all of the photographs 'looked different,'" Brief for Appellants at 23, and because Murray's picture most closely fit Sanders's general description of the robber. The district court denied the motion to suppress the photo line-up identification, finding nothing unduly suggested Murray. Citing *Reese*

*v. Fulcomer*, 946 F.2d 247, 261 (3d Cir.1991), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992), Murray argues again on appeal that his picture was "so different from the rest that it suggests culpability." Brief for Appellants at 23. Thus, he contends, the pre-trial identification procedure was so flawed as to taint any later in-court identification.

■ Eyewitness identification at trial following an earlier pretrial photographic identification is permissible unless the photo line-up procedure is "'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Hughes*, 716 F.2d at 241 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). Murray points to nothing indicating the photo line-up was unduly suggestive. Murray does not specify what distinguishes his photo from the others in the line-up, other than to state that he "most closely fit" Sanders' "general description of a black male in his twenties or thirties, light-skinned, rough complexion, clean-shaven, with a baseball cap." Brief for Appellants at 23. Murray does not explain what so distinguishes his photograph from the others and has raised no other issue indicating a substantial likelihood of irreparable misidentification. Thus, his generalized assignment of error and lack of record support prevents us from finding any abuse of discretion by the district court.

■ As to the in-court identifications by Susan McDaniel and Jerry Cotton, respectively a credit union employee and a customer, Murray argues that the identifications were tainted because, prior to their testimony, the Government allowed these witnesses to enter the courtroom and see Murray seated at the defense table with his counsel during a break in the trial.[5] Extrapolating from *Reese*, he argues that because unarranged pre-trial confrontations between a victim and the defendant are not unduly suggestive, 946 F.2d at 261, the "pre-trial identification" arranged by the Government here

─────────

5. Although the district court made no finding to that effect, the Government admits that "[p]rior to their testimony, during a break in the trial, both witnesses were asked to go into the courtroom and see if they recognized anyone." Brief of Appellee at 14–15.

was necessarily so. We decline to adopt Murray's proposed *per se* rule that a confrontation arranged by the government is unduly suggestive. In *Code v. Montgomery*, 725 F.2d 1316 (11th Cir.1984), the prosecution did not conduct a pretrial lineup, the defendant was placed at the defense table while prosecution witnesses were present, and, unlike in Murray's trial, the witnesses were not sequestered and one witness was present when the defendant was identified by another eyewitness. The court, relying on each witness's opportunity to view the defendant during the robbery, upheld the in-court identifications, holding that under the totality of the circumstances the witnesses' identification of the defendant "carried with it no 'very substantial likelihood of misidentification.'" *Id.* at 1320 (quoting *Simmons*, 390 U.S. at 384, 88 S.Ct. at 971). Based on the totality of the circumstances,[6] we agree that although the Government allowed the witnesses to see Murray seated at the defense table prior to their testimony, it did not create a substantial likelihood of irreparable misidentification. Both witnesses would have seen Murray at the defense table immediately before testifying. The fact that they may have seen him at the defense table earlier in the day does not diminish the reliability of their in-court identification based upon their clear recollection of Murray during the robbery. On the day of the robbery, Cotton and McDaniel both looked closely at Murray in broad daylight, both were sufficiently observant as he drove away to notice that his car had no license plates, and both were positive in their identification of Murray at trial. Murray presents no evidence of a likelihood of misidentification other than the fact that both witnesses saw him seated at the defense table prior to testifying. We conclude that the district court did not abuse its discretion in allowing the in-trial identifications.

### B.

■ Murray next argues the district court erred by allowing the jury to learn that Murray made an oral statement to investigators informing them that he was involved in the October 1993 robbery. The statement itself was not admitted at trial. During a pre-trial motion to suppress, Murray denied confessing to the robbery and argued that the F.B.I. agents who interviewed him fabricated his statement. The district court denied the motion, finding the testimony of the F.B.I. agents sufficiently credible to go to the jury. On appeal, Murray argues that the district court erred in finding that he made such a statement.

■ Though Murray disagrees with the credibility determination of the district court, it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress. *See United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir.1987) (per curiam). We review credibility determinations and resulting factual findings for clear error, according deference to the district court. *Id.* Murray fails to show how the district court erred in finding evidence of his statement admissible, when its finding was based on the court's determination that Murray's testimony at the suppression hearing was not credible and that the F.B.I. agent's testimony that Murray did confess to the robbery was credible. We find no clear error in the court's decision to admit evidence of Murray's statement.

### C.

■ Murray argues that the court erred by admitting into evidence a sawed-off shotgun because the bank teller, Sanders, was not sure it was the weapon she observed during the robbery. He also contends the evidentiary foundation was inadequate because there was no rational basis from which to conclude that Murray possessed a shotgun. Thus, Murray argues the gun was inadmissible under Fed.R.Evid. 403 as unduly

---

**6.** The circumstances that we must consider include

the opportunity of the witnesses to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972).

prejudicial.[7] We disagree.

A district court is given broad discretion in its evidentiary rulings, which are entitled to substantial deference. *Russell*, 971 F.2d at 1104. As to the identity of the shotgun, Sanders testified that the gun used in the robbery, which was partially concealed in Murray's trousers and underneath his jacket, appeared to be a sawed-off shotgun or rifle. As to Murray's possession of the shotgun, a few weeks after the robbery, Sanders had identified Johnson from a photo line-up as the woman with Murray during the robbery of the credit union. Other evidence at trial demonstrated that Johnson was pregnant as a result of Murray and Johnson's intimate relationship before and around the time of the robbery. The shotgun was recovered from Johnson's possessions at a location where Murray visited her several times a week. This evidence tends to make it more likely than not that the shotgun recovered was used by Murray during the robbery. Fed.R.Evid. 401. Admission of a weapon into evidence is highly probative in an armed robbery conviction, whereas the prejudicial impact of its admission here is lessened by Sanders' testimony that the robber used a sawed-off weapon and by the other evidence linking Johnson and Murray together with the shotgun and the robbery of the credit union. We therefore find that the district court did not abuse its discretion in admitting the shotgun into evidence.

### D.

Murray, like Johnson, argues the district court erred during sentencing by finding he made an express threat of death under U.S.S.G. § 2B3.1(b)(2)(F). Murray contends that merely revealing his gun to a teller was not sufficient support for the enhancement.[8] The record reflects, however, that Murray approached Sanders at her teller's station and, referring to several stacks of money, demanded "give me that, give me that" as he displayed the butt of his shotgun to Sanders several times, and put his hand on its stock when he thought she had triggered the alarm. (J.A. 110.) In finding that Murray's actions constituted an express threat of death and accordingly enhancing Murray's sentence by two levels, the district court relied on application note 6 and on the same reasoning that we adopted in part II.C. above in upholding Johnson's § 2B3.1(b)(2)(F) enhancement.[9] *See, e.g., Hunn*, 24 F.3d at 997 ("a bank robber's pointing his hand through his coat pocket, while claiming to have a gun, can be a sentence-enhancing, death-threat expression"); *Smith*, 973 F.2d at 1378 (threat of using a gun during a robbery is an express threat of death when it instills "greater fear than necessary to carry out the robbery"). Because we agree that a reasonable person would fear for her life if threatened in a similar manner by a sawed-off shotgun during a robbery, even if the gun were not drawn completely from under the robber's clothing, we conclude the district court did not err by enhancing Murray's sentence for making an express threat of death.

### E.

Next, Murray challenges the extent of an upward sentencing departure imposed by the district court. The district court enhanced Murray's sentence five levels for brandishing a firearm during a robbery,

---

**7.** Rule 403 states:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

**8.** Murray, like Johnson, relies on *Moore*, wherein the Eleventh Circuit stated that the threat of death "must be directly and distinctly stated or expressed rather than implied or left to inference." *United States v. Moore*, 6 F.3d 715, 721 (11th Cir.1993). *See supra* note 3.

**9.** Sanders was five months pregnant at the time of the robbery. The evidence during sentencing showed that she was afraid Murray would shoot or kill her, and she begged him not to shoot her. The district court found the enhancement was appropriate because, among other factors, Sanders' reaction was that of a reasonable victim in her position.

pursuant to U.S.S.G. § 2B3.1(b)(2)(C).[10] The court also departed above the authorized guideline range and increased his sentence by six levels because of the dangerousness of the weapon used. U.S.S.G. §§ 5K2.0, 5K2.6, p.s. A court may sentence outside the guideline range when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." § 5K2.0. The extent of the increase under § 5K2.6 for possession of a weapon depends "on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." During oral argument, Murray's counsel made clear that he was not challenging the authority of the district court to impose a sentence outside of the guideline range,[11] but that his challenge on appeal was only to the extent of the upward departure. We review the reasonableness of the extent of an upward departure imposed under the Guidelines under an abuse of discretion standard. *United States v. Hummer,* 916 F.2d 186, 192 (4th Cir.1990), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991).

The district court determined that the offense conduct guideline for robbery does not distinguish between the types of firearms used. U.S.S.G. § 2B3.1(b)(2). Because a sawed-off shotgun is more dangerous than a pistol, the court based its six level upward departure on an analogy to the distinction drawn between a pistol and a sawed-off shotgun under U.S.S.G. § 2K2.1(a), which punishes possession of a firearm by a felon.[12] This departure increased Murray's maximum possible sentence from 168 months at offense level 33 to 327 months at offense level 39. The district court sentenced Murray to 300 months.

The district court's use by analogy of a guideline reflecting similar conduct—possession of a shotgun—supports the reasonableness of its decision. "When departing on the basis of offense characteristics, the sentencing court should extend or extrapolate from other Guideline levels or principles, or employ analogies to closely related circumstances or conduct addressed by the Guidelines." *United States v. Strickland,* 941 F.2d 1047, 1051 (10th Cir.), *cert. denied,* 502 U.S. 993, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991); *United States v. Gary,* 18 F.3d 1123, 1131 (4th Cir.) (approving analogy to other guidelines or to similar case law and holding that a sentencing "court must set forth some form of principled justification for its departure determination"), *cert. denied,* —— U.S. ——, 115 S.Ct. 134, 130 L.Ed.2d 77 (1994); *Hummer,* 916 F.2d at 194 & n. 7 (approving reference to analogous guideline provisions to measure reasonableness of upward departure).[13] The court in *United States v. Thom-*

10. Murray does not challenge this enhancement.

11. We find support for this departure in similar cases affirming an upward departure based on the dangerous nature of the weapons possessed. For instance, in *United States v. Lee,* 989 F.2d 180 (5th Cir.1993), the Fifth Circuit upheld as reasonable a 65 month upward departure under § 5K2.6 against a robbery defendant who received a 300 month sentence when the defendant discharged a semi-automatic pistol in an attempt to foil police pursuit. *Id.* at 183. In a case involving possession of an unregistered firearm, a machine gun, the Fifth Circuit noted that the offense conduct guideline for that crime did "not distinguish between different types of firearms." *United States v. Lopez,* 875 F.2d 1124, 1128 (5th Cir.1989). That court further noted that "the type of weapon in issue, a machinegun," could be considered an aggravating circumstance warranting departure, and that under § 5K2.6 the possession of a loaded pistol during the offense might also support an upward departure. *Id.* at 1129 (the Fifth Circuit in remanding the case for resentencing was providing guidance to the district court on valid reasons for departure because the district court failed to list valid grounds for its decision to depart).

12. Under that provision of the Guidelines, a sawed-off shotgun carries a base offense level of 18, whereas other firearms carry a level of 12. U.S.S.G. § 2K2.1(a)(5), (7).

13. For instance, in *Melton* we affirmed the district court's 153 month upward sentencing departure from the applicable maximum 87 month sentence under the Guidelines. *Melton,* 970 F.2d at 1334. The district court departed upward because the defendant was responsible for a murder, for which the guideline range did not account, that was related to the drug conspiracy charged. 970 F.2d at 1330. To determine the extent of departure, the district court relied on analogous guideline provisions for first degree murder and for a death that results from the use of a drug. *Id.* at 1334. We approved of this analytical approach and, applying the abuse of

*as*, 914 F.2d 139 (8th Cir.1990), upheld the district court's departure of forty-six months above the maximum guideline range when the district court cited as one reason for departure the aggravating circumstance of "the dangerous nature of the firearms," a 9mm pistol and an AK47 assault rifle, when sentencing the defendant for possession of a firearm by a convicted felon. *Id.* at 143.

Here, in determining the proper extent of departure, the district court properly looked to what the Sentencing Commission had considered a proper range—six levels—to distinguish between a handgun and a shotgun in a similar guideline. The district court did not abuse its discretion by departing upwards six levels based on the dangerousness of the weapon used.

### IV.

For the above reasons, we affirm Johnson's sentence and Murray's conviction and sentence.

*AFFIRMED.*

discretion standard of *Hummer*, held that the extent of departure was reasonable. *Id.* Likewise, the defendant in *United States v. Lara* pleaded guilty to illegally transporting and harboring aliens, which resulted in an offense level of nine under the Guidelines. *United States v. Lara*, 975 F.2d 1120, 1126 n. 7 (5th Cir.1992). The district court upwardly departed an additional nine levels based upon an analogy between the defendant's conduct and the conduct proscribed by a similar guideline providing sentences for extortion. *Id.* at 1123. Noting its reluctance "to tread with too heavy a step upon the district court's discretion," the Fifth Circuit upheld the departure based on the strength of the analogy. *Id.* at 1126. The court noted that " 'the mere fact that a departure sentence exceeds by several times the maximum recommended under the Guidelines is of no independent consequence in determining whether the sentence is reasonable.' " *Id.* (quoting *United States v. Roberson*, 872 F.2d 597, 606 n. 7 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989)).