[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13113
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 28, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02699-CV-T-23MSS

MICHAEL DESHON BALL,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 28, 2008)**

Before TJOFLAT, BLACK and HULL, Circuit Judges.

PER CURIAM:

Michael Deshon Ball, a federal prisoner proceeding pro se, appeals the denial of his 28 U.S.C. § 2255 motion to vacate his sentence. After review, we affirm.

## I. BACKGROUND

### A. Ball's Trial and Direct Appeal

Ball was charged with two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Counts 1 and 2), brandishing a firearm during the second bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 3), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 4). Ball pled not guilty.

At trial, the government presented evidence of two bank robberies. The first bank robbery occurred on May 10, 2001 at Chemical & Industrial Federal Credit Union ("Chemical"). A Chemical bank teller, Elizabeth Styron, testified that a dark-complected black man entered, grabbed her hand and demanded that she give him all her money. The robber had a small silver revolver with a black handle. Styron gave the robber $10,784, and he left. Styron immediately called 911. Styron gave police a description of the robber and assisted in developing a composite sketch, which generally matched Ball.

The second bank robbery occurred on June 1, 2001 at Colonial Bank. The

robber pointed a revolver at the teller and demanded money. The teller gave the robber $2,271 with a dye pack surrounded by "bait bills." Other bank employees saw the robber get in a car and called out the license plate number. Bank employees gave the police the license plate number and a description of the robber and the car.

Shortly thereafter, police spotted a car matching the description of the bank robber's car. This car belonged to Ball, who was arrested. A search of Ball's car revealed $2,271, the "bait bills," and a chrome-plated revolver. Police also found stubs for $8,000 in money orders issued on May 11, 2001, the day after the Chemical bank robbery, and on May 22, 2001. Ball was taken to Colonial Bank, where a bank employee identified him as the bank robber.

At trial, Styron testified that Ball was the man who robbed Chemical. Ball's trial counsel did not file a pretrial motion to suppress Styron's in-court identification or object to her in-court identification during trial. Instead, Ball's trial counsel cross-examined Styron about her earlier inability to identify Ball during a photo lineup prior to trial and about the police officers' suggestive procedures during that photo lineup. Ball's counsel also got Styron to admit that photographs taken by the bank's surveillance camera during the robbery showed a man who appeared to be lighter complected. During closing arguments, Ball's

counsel argued that Styron's in-court identification of Ball was a result of the suggestive photo lineup and was unreliable.

The jury found Ball guilty on all counts. The district court imposed concurrent 109-month sentences on Counts 1, 2 and 4 and a consecutive 84-month sentence on Count 3, the brandishing-a-firearm offense.

In his direct appeal, Ball argued, among other things, that the admission of Styron's in-court identification violated due process.[1] Reviewing for plain error, this Court concluded that there was no reversible error. United States v. Ball, No. 02-10453, slip op. at 13-14 (11th Cir. Oct. 30, 2002). Specifically, the Court concluded that, even assuming there was plain error that affected Ball's substantial rights, the admission of this testimony under the circumstances did not seriously affect the fairness, integrity and public reputation of the judicial proceeding. Id. at 13. The Court explained that this was so because Ball's counsel had chosen a trial strategy of using the weaknesses in Styron's in-court identification to impeach her, as follows:

> At trial, rather than object to the admission of this testimony, Ball's counsel opted to cross-examine Styron and draw out her earlier inability to identify Ball during the photo line-up and her subsequent certainty only after suggestive identification procedures [were] used. Indeed, discrediting Styron's identification appeared to be defense

---

[1]Shortly after Ball filed his notice of direct criminal appeal, his trial counsel died in an automobile accident.

counsel's entire strategy with regard to the Chemical robbery count. Defense counsel reemphasized this strategy during closing argument, when he challenged Styron's credibility and reliability as a witness, based on her testimony that she had been unable to identify him in the photographic line-up.

Because Ball chose to develop Styron's testimony highlighting the unreliability of her identification and then to capitalize on it in closing argument, any error did not seriously affect the fairness, integrity and public reputation of the judicial proceedings. We conclude this is particularly so because of the other evidence linking Ball to the Chemical robbery, including the composite sketch, the positive identification of his firearm later found in his car, and the $8,000 in money order stubs also found in his car.

Id. at 13-14 (citation omitted).

## B.    Ball's § 2255 Motion

On December 24, 2003, Ball, pro se, filed this § 2255 motion, claiming, inter alia, that his trial counsel was ineffective by failing (1) to call available alibi witnesses to testify, and (2) to move to suppress Styron's in-court identification. The district court denied Ball's § 2255 motion, finding that the decisions of Ball's trial counsel had been reasonable strategic choices. Ball filed a motion for reconsideration, which the district court denied.

Ball filed this appeal. We granted a certificate of appealability as to: whether the district court erred in finding that Ball's trial counsel was not ineffective for failing: (1) to call alibi witnesses to testify with regard to the Chemical bank robbery, and (2) to move to suppress Styron's in-court

5

identification of Ball as the Chemical bank robber.

## II. DISCUSSION

**A.     Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance, a petitioner must show that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant.  Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc).  In deciding whether counsel's performance was deficient, judicial scrutiny is "'highly deferential'" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (quoting Strickland v. Washington, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 2065-66 (1984)).

Accordingly, we will not "second-guess counsel's strategy."  Id. at 1314 n.14.  Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others–whether or not he investigated those other defenses–is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable."  Id. at 1318 (quoting

6

Strickland, 446 U.S. at 690-91, 104 S. Ct. at 2066).

"[W]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (quotation marks omitted).  The petitioner's burden is a heavy one.   To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers, 13 F.3d at 386.[2]

## B.    Alibi Witnesses

Ball argues that his trial counsel should have called Ball's wife, brothers and cousin, who told Ball's trial counsel that Ball had been shopping with them at the time of the Chemical robbery or at a minimum conducted follow-up interviews of

---

[2]When reviewing the district court's denial of a § 2255 motion, we review factual findings for clear error and legal conclusions de novo. Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004).  "A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo." Gordon v. United States,___ F.3d ___, 2008 WL 614189, at *4 (11th Cir. Mar. 7, 2008).

A district court's denial of an evidentiary hearing is reviewed for an abuse of discretion. Aron v. United States, 291 F.3d 708, 714 n.5 (11th Cir. 2002).  We reject Ball's claim that the district court was required to conduct an evidentiary hearing.

those witnesses.[3]

Trial counsel's decisions with regard to Ball's alibi witnesses were quintessential trial strategy. See Chandler, 218 F.3d at 1314 n.14 (describing the decision to call some witnesses and not others as "the epitome of a strategic decision" (quotation marks omitted)); Blanco v. Singletary, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). Ball has failed to show that his counsel's strategic decisions were unreasonable.

The record shows that Ball's counsel spoke with the alibi witnesses and knew what they would have said on the stand. Nothing in these witnesses' affidavits suggests that they told trial counsel something that would have indicated to any reasonable attorney that further interviews were required.[4]

---

[3]Ball filed affidavits of: (1) his wife, one brother and his cousin attesting that they were shopping with Ball from 10:00 a.m. to 4:00 p.m. on May 10, 2001; and (2) his mother stating that she had spoken with her son on the telephone at 11:15 a.m. on May 10, 2001 and that Ball had told her he was shopping with his wife, brothers and cousin at the mall. All affiants had discussed this information with Ball's counsel, but they were not thereafter contacted by him. Ball's wife averred that when Ball's counsel failed to follow up with them, Ball's wife confronted him about it. Ball's trial counsel responded that he "knew what he was doing and had the case won."

[4]We do not evaluate decisions not to investigate further in hindsight. See Rogers, 13 F.3d at 388 ("Once we conclude that declining to investigate further was a reasonable act, we do not look to see what a further investigation would have produced."). However, we note that Ball does not claim that his counsel would have uncovered new information if he had conducted follow-up interviews.

Furthermore, as the district court noted, Ball's alibi witnesses were all close family members with a strong motive to fabricate an alibi defense for him. As such, their testimony would not have been particularly compelling and would have been subjected to vigorous impeachment. If trial counsel had called these alibi witnesses and the jury had disbelieved them, the jury also could have inferred that Ball was in fact the Chemical bank robber. Thus, by placing Ball's family members on the stand, trial counsel ran the risk of undermining the effectiveness of his impeachment of Styron's identification. Under the circumstances, we cannot say that no competent counsel would have made the strategic choices that Ball's trial counsel made with regard to these alibi witnesses.

## C.    Styron's In-court Identification

As this Court's opinion noted in Ball's direct appeal, trial counsel used Styron's inability to identify Ball in the photo lineup and the police's suggestive procedures to impeach her credibility rather than to try and suppress her in-court testimony. Because this strategic decision is presumed to be reasonable, Ball was required to show that no competent counsel would have made that decision. See Grayson, 257 F.3d at 1216; Chandler, 218 F.3d at 1315. The test is not "what the best lawyers would have done," or "what most good lawyers would have done," but "whether some reasonable lawyer at the trial could have acted, in the

9

circumstances, as defense counsel acted at trial." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As the Supreme Court has explained, "[t]here are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. In determining whether counsel's conduct falls "outside the wide range of professionally competent assistance," we are to "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in a particular case." Id. at 690, 104 S. Ct. at 2066. "If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense . . . existed . . . . The lawyer's strategy was course A. And, our inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one." Chandler, 218 F.3d at 1315 n.16.

An unduly suggestive photographic lineup does not necessarily require the suppression of an in-court identification. See, e.g., Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977) (rejecting a per se rule requiring exclusion of an identification when it was obtained following unduly suggestive procedures). Instead, whether an in-court identification tainted by suggestive police procedures should be suppressed turns on its reliability as assessed by a

10

variety of factors, called the Biggers factors. See Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972); Code v. Montgomery, 725 F.2d 1316, 1319-20 (11th Cir. 1984). These factors include the witness's opportunity to view the criminal, the degree of attention, the accuracy of the witness's prior description of the criminal, the level of the witness's certainty and the length of time between the crime and the identification. Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382. The in-court identification will be suppressed only if, after considering these factors, there is a "very substantial likelihood of irreparable misidentification." See Manson, 432 U.S. at 116, 97 S. Ct. at 2254 (explaining that short of a "very substantial likelihood of irreparable misidentification . . . . such evidence is for the jury to weigh") (quotation marks omitted).

Some of the Biggers factors weighed in favor of admission in Styron's case (such as the fact that Styron had a good opportunity to view the bank robber and gave an accurate description of Ball right after the robbery, as reflected in the composite sketch), and we cannot say suppression was a forgone conclusion. Furthermore, the government did not rely solely upon Styron's identification of Ball, but presented other evidence linking Ball to the Chemical bank robbery, including the composite sketch (which was not tainted by suggestive procedures), the positive identification of the firearm found in Ball's car, and Ball's $8,000 in

11

money order stubs.

Under the circumstances, competent counsel could have concluded that, rather than telegraph his impeachment strategy as to Styron in a possibly unsuccessful motion to suppress, he would save it in hopes that his cross-examination would be more effective. Thus, we cannot say no reasonable attorney would have opted to risk Styron identifying Ball in court and then used the damaging information challenging the reliability of her identification to discredit her. We certainly cannot say that trial counsel's choice in Ball's case caused the adversarial testing process not to work, which is our ultimate concern.

Because Ball has not carried his burden to show that trial counsel's decisions not to pursue an alibi defense and not to move to suppress Styron's in-court identification were objectively unreasonable, the district court did not err in denying Ball's § 2255 motion.

**AFFIRMED.**